1  MACDONALD FERNANDEZ
   IAIN A. MACDONALD (SBN 051073)
2  RENO F.R. FERNANDEZ III (SBN 251934)
   221 Sansome Street, Third Floor
3  San Francisco, CA 94104
   Telephone: (415) 362-0449
4  Facsimile:  (415) 394-5544

5  Attorneys for Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In Re:<br><br>FIRST STREET HOLDINGS NV, LLC, et al.<br><br>Debtors. | Case No.   11-49300-RLE-11<br><br>(Jointly Administered with Case Nos. 11-49301, 11-70224, 11-70228, 1-70229, 11-70231, 11-70232, 11-70233 and 11-70234)<br><br>Chapter 11<br><br>AMENDED MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS<br><br>Date: January 25, 2012<br>Time: 9:00 am<br>Place: 1300 Clay Street, Courtroom 201<br>       Oakland, California<br><br>Honorable Roger L. Efremsky |

**Proposed Purchaser**

Wilton Acquisitions Corp. and/or Assignee, subject to higher and better bids

| **Assets to be Sold** | **Price** |
|---|---|
| Building located at 50 First Street, 62 First Street, 78 First Street and 88 First Street in San Francisco, California | $97,000,000 |
| Vacant land located at 514-524 Mission Street in San Francisco, California | |
| Transferrable development rights held by JP Capital, LLC | |

| **Holders of Disputed Liens** | **Asserted Claim** |
|---|---|
| MS Mission Holdings, LLC | $95,664,969 as of October 1, 2011 |

COME NOW First Street Holdings NV, LLC, Lydian SF Holdings, LLC, 78 First Street, LLC, 88 First Street, LLC, 518 Mission, LLC, First/Jessie, LLC, JP Capital, LLC, Peninsula Towers, LLC and Sixty-Two First Street, LLC, Debtors-in-Possession herein, and move for entry of an order approving the sale of certain real and personal property, described below, subject to the submission of higher and better bids, free and clear of all liens, claims, encumbrances and other interests identified herein.

The Court has jurisdiction of these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This Motion is made pursuant to Bankruptcy Code Sections 105(a), 363(b), 363(f)(3) and (4), Rule 6004 of the Federal Rules of Bankruptcy Procedure and Bankruptcy Local Rule 6004-1. This Motion is based on the memorandum of points and authorities, below, the Declaration of Graham Seel, filed herewith, any other pleadings or declarations that may be filed in support hereof, and will be based upon such other evidence and arguments as may be presented prior to or at the hearing on this Motion.

## I. BACKGROUND AND SUMMARY OF RELIEF SOUGHT

### A. Background

1. The cases of *In re First Street Holdings NV, LLC* (Case No. 11-49300-RLE-11) and *In re Lydian SF Holdings, LLC* (Case No. 11-49301-RLE-11) were commenced by filing a voluntary chapter 11 petitions on August 30, 2011. The remainder of the within cases were commenced by filing voluntary chapter 11 petitions on September 23, 2011. No trustee has been appointed, and the Debtors are in possession of their estates.

2. Since the initial hearing on this Motion, held on January 4, 2012, there has been increased interest in purchasing the Debtors' assets. This Amendment is to change the stalking horse bidder to Wilton Acquisitions Corp. and/or its assignee and to revise the proposed bidding procedures.

3. The Debtors propose to sell four buildings located at 50 First Street, 62 First Street,

78 First Street and 88 First Street in San Francisco, California; vacant land located at 514-524 Mission Street in San Francisco, California; and transferrable development rights held by JP Capital, LLC to Wilton Acquisitions Corp. for the gross price of $97 Million, subject to higher and better bids.

4. After the sale, the assets remaining in the estate will consist of $50,000 in cash held by Peninsula Towers, LLC and certain claims against MS Mission Holdings, LLC and third parties, which claims are the subject of litigation pending in this Court (*First Street Holdings NV, LLC, et al. v. MS Mission Holdings, LLC, et al.*, Adv. Proc. No. 11-04334-RLE).

5. MS Mission Holdings, LLC is the estates' only secured creditor. On December 2, 2011, a trial was held on certain motions for relief from the automatic stay filed by MS Mission Holdings. On December 7, 2011, the Court entered its order granting relief from the automatic stay and finding that the value of MS Mission Holdings' collateral is $70.7 Million (Docket No. 119). MS Mission Holdings asserts a claim in the amount of $95,664,969, as of October 1, 2011, secured by a lien against substantially all of the Debtors' assets. The Debtors dispute said claim pursuant to the allegations raised in the aforesaid litigation and the Objection to Claim of MS Mission Holdings, LLC (Docket No. 55). The Debtors took an appeal from said order by filing a notice of appeal on December 20, 2011 (Docket No. 122).

**B. Proposed Sale**

6. On the date hereof, the Debtors and Wilton Acquisitions Corp. executed that certain Purchase and Sale Agreement, a copy of which is attached as Exhibit "A" to the Declaration of Graham Seel, filed herewith (the "PSA"). The PSA provides for a sale of the aforesaid assets for the gross price of $97 Million, subject to overbid and court approval.

7. The sale is conditional upon Wilton Acquisition Corp.'s purchase of certain assets from Marcus Heights, LLC for a price to be determined. Marcus Heights holds certain rights and owns certain plans and drawings pertaining to the development of the assets to be sold pursuant to this Motion. Neither Marcus Heights nor its assets are assets of the estate or collateral for MS Mission Holdings' claim. The sole member of Marcus Heights is not related to the Debtors, their major creditors or their principals. In the event that Wilton Acquisition Corp. is not the successful

bidder, the assets of Marcus Heights will not be sold to Wilton Acquisition Corp. and the successful bidder will be entitled to obtain the assets on terms equivalent to the terms agreed to by Wilton Acquisition Corp. Said terms will be disclosed at the hearing.

8. The Debtors request approval of the sale free and clear of the disputed portion of MS Mission Holdings' lien pursuant to Bankruptcy Code Sections 363(f)(3) and (4), with the lien to attach to proceeds.

9. Wilton Acquisition Corp. has agreed to purchase the Debtors' assets together and is not willing to purchase any of the Debtors' assets individually because dividing the assets will harm their potential for development. The Debtors have determined that potential overbidders are likely to purchase the properties together for the same reason.

10. The Debtor was represented by The Carlton Group, Ltd., which requests a commission of 1.5% of the gross purchase price. This Motion requests approval of said commission.

11. The Debtor requests that the provisions of Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure that would stay the order approving the sale be waived under the circumstances.

### C. Proposed Bidding and Sale Procedures

12. The Debtors request approval of the following bidding and sale procedures:

- The auction shall be held concurrently with the hearing on this Motion, at the same location, or at another location if ordered by the Court and announced at the time and place of the hearing. The hearing will take place on January 25, 2012, at 9:00 am, or as soon thereafter as the matter may be heard. Bids shall be accepted from bidders or their authorized representatives who are present at the auction; bids by telephone, facsimile, email, letter or similar means shall not be accepted.

- At the time of auction, all bidders shall present the Debtors with evidence of funds or financing acceptable to the Debtors in an amount necessary to meet the initial bid ($97 Million) plus the minimum overbid amount. The minimum initial overbid shall be $100,000, and the minimum amount of all subsequent bids shall be $100,000. All bids shall be for the purchase of all of the assets offered for sale in aggregate; no bids for the purchase of individual assets shall be

accepted.

- Subject to the right of any secured creditor to credit bid, all bids shall provide for payment in full at closing. Bids shall be unconditional and shall have no contingencies other than contingencies equivalent to, or more favorable to the estate than, the contingencies provided in the PSA. Any sale shall be on an "as is," "where is," and "with all faults" basis. In the event of an overbid, the highest and best bid shall be reduced to a written agreement on or before five (5) calendar days of the hearing on approval of the sale.

- On or before five (5) calendar days of the hearing, the bidder shall deposit to escrow the amount of $500,000, to be credited toward the purchase price. The deposit shall be refundable only upon terms equivalent to, or more favorable than, the provisions for return of deposits provided in the PSA. The deposit shall be increased to $2,500,000 on the date of removal of all contingencies, if any, which deposit shall be non-refundable.

- Any sale, including a sale to Wilton Acquisition Corp., must close within 55 calendar days of entry of the order approving the sale, which closing date may be extended for a maximum of 30 additional days by agreement of the parties.

- The net proceeds of the sale, up to the amount of the claim asserted by MS Mission Holdings, shall be deposited to a segregated account held by one or more of the Debtors for the benefit of MS Mission Holdings, or held as the Court may direct, pending resolution of MS Mission Holdings' disputed claim. Said funds shall be disbursed to MS Mission Holdings or to the Debtor, as the case may be, upon the earlier of (a) the date on which an order resolving MS Mission Holdings' disputed claim becomes final or (b) the later of (i) execution of an agreement resolving said disputed claim or (ii) entry of an order approving such agreement, if necessary. The balance of proceeds shall be deposited to the Debtors' debtor-in-possession accounts.

## II. SUMMARY OF PROPOSED SALE

13. On the date hereof, the parties discovered certain typographical errors in the PSA, including errors with respect to provisions regarding refund of deposits (Section 1.7) and representations regarding brokers (Section 13). Notwithstanding any provisions to the contrary in the PSA, the following terms and conditions shall control: (a) Wilton Acquisition Corp. shall

purchase the above-described assets for the gross price of $97 Million; (b) the sale shall be subject to Wilton Acquisition Corp.'s due diligence, to be completed on or before the date that is 21 days from entry of the order approving the sale; (c) Wilton Acquisition Corp. shall deposit $500,000 into escrow within one day of execution of the agreement, which deposit shall become non-refundable upon the expiration of the aforesaid due diligence period; (d) Wilshire Acquisition Corp. shall deposit an additional $2 Million within one day of expiration of the due diligence period, which deposit shall be non-refundable; (e) the sale shall close within 30 days of expiration of the due diligence period; and (f) the sale is subject to Court approval. A corrected agreement will be filed with the Court promptly.

### III. ANALYSIS OF SALE

#### A. Background and Marketing of Assets

14. The properties are across the corner from the redeveloped Transbay Terminal currently under construction, including the site of a 1,000-foot tall tower to be built, and are within the area that will be upzoned for development into highrise towers pursuant to the Transbay Center District Plan. The properties are high-profile and well-known to brokers and developers in the area.

15. The principals of the Debtors are sophisticated parties knowledgeable of the local real estate market. The Debtors consulted with brokers, real estate developers and investors, and the Debtors corresponded, communicated and met with at least ten interested parties. The Debtors retained The Carlton Group. as brokers, and The Carlton Group obtained Wilton Acquisitions Corp.'s offer.

16. There was significant interest in the properties, and said marketing efforts resulted in three offers. The offer by Wilton Acquisition Corp. is the highest and best offer received.

#### B. Asset Valuation

17. In support of MS Mission Holdings' motion for relief from the automatic stay, it filed an appraisal estimating the value of the assets to be $70.7 Million. In opposition, the Debtors filed an appraisal estimating the value of the assets to be $140 Million. At trial, the Court accepted and agreed with MS Mission Holdings' appraisal and ruled that the assets have a fair market value of $70.7 Million. Accordingly, the purchase price of $97 Million provides the estate with cash in

6
AMENDED MOTION TO SELL ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
Case: 11-49300    Doc# 152    Filed: 01/10/12    Entered: 01/10/12 21:24:48    Page 6 of 10

excess of the value of the assets.

### C. Relationship to Purchaser

18. The Debtors are informed and believe that Wilton Acquisition Corp. does not have any connection to the Debtors, their estates or their affiliates, with the exception of the proposed sale, and the Debtors have never transacted any business with Wilton Acquisition Corp.. The proposed sale is the result of arms-length negotiations. No member or manager of the Debtors serves as an officer, director or shareholder of Wilton Acquisition Corp.. Wilton Acquisition Corp. has no known relationship with any of the Debtors' major creditors. Wilton Acquisition Corp. does not have any known connection to any other party likely to be a potential bidder.

### D. Insider Compensation

19. To the best of the Debtors' knowledge, Wilton Acquisition Corp. has not offered any compensation to any of the members, managers, agents or employees of the Debtors. To the best of the Debtors' knowledge, Wilton Acquisition Corp. does not contemplate paying any consideration to any person or entity other than the Debtors in connection with the sale, with the exception of brokers commissions and other closing costs.

### E. Estimated Net Proceeds

20. If the Debtors are successful in disputing the full amount of MS Mission Holdings' claim, the sale will generate net proceeds of $97 Million less closing costs. If MS Mission Holdings' secured claim is allowed in the amount of $70.7 Million, the Debtors estimate that the sale will generate net proceeds of $26.3 Million less closing costs.

## IV. ARGUMENT

### A. THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE

21. The Debtors are entitled to sell the properties upon the terms described above because such a sale is within its reasonable business judgment. *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986) (standard under 11 U.S.C. § 363(b)(1) is "business judgment"); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D.Wash. 1997). "[T]he bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re*

*Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (applying business judgment standard). Where a sale is proposed in good faith and upon a reasonable basis, "[t]he court will not entertain objections to a trustee's conduct of the estate." *In re Curlew Valley Associates*, 14 B.R. 506, 513-514 (Bankr. D. Utah 1981); *see also In re Southern Biotech, Inc.*, 37 B.R. 318, 322-323 (Bankr. M.D. Fla. 1983). This is because the "Trustee, not the Court, is selling this property." *In re Gulf States Steel, Inc.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

22. The Debtors submit that the sale is in the best interests of the estate. An auction sale is generally considered to establish sufficient value for the assets being sold. *See, eg., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3rd Cir. 1986). The Ninth Circuit has held that the precise value of an asset will only be recognized at, and as a result of, the sale of the asset. *Arnold & Baker Farms v. United States*, 85 F.3d 1415, 1421 (9th Cir. 1996). As discussed above, the sale is subject to overbid. Therefore, the Debtors have determined that the proposed sale will result in the highest and best offer for the properties.

**B.  THE TRUSTEE IS ENTITLED TO SELL THE PROPERTIES FREE AND CLEAR OF DISPUTED AND OVERSECURED LIENS**

23. The Debtors are entitled to sell the properties free and clear of disputed liens pursuant to Bankruptcy Code Section 363(f)(4) with the liens to attach to proceeds of the sale in the same priority, validity, extent and amount as at the time of closing. As discussed above, the Debtors have commenced an adversary proceeding against MS Mission Holdings and filed an objection to its claim. In other words, MS Mission Holdings' claim is disputed.

24. Moreover, the proposed sale price is in excess of MS Mission Holdings' secured claim, which is $70.7 Million. Therefore, the Debtors are entitled to sell the properties free and clear of MS Mission Holdings' lien pursuant to Bankruptcy Code Section 363(f)(3). This Motion requests an order providing that all net proceeds shall be held pending resolution of MS Mission Holdings' claim, and its lien shall attach to said proceeds with the same extent, validity and priority as under non-bankruptcy law.

**C.  THE PROPOSED SALE IS IN GOOD FAITH AND THE PURCHASER IS ENTITLED TO THE PROTECTIONS OF BANKRUPTCY CODE SECTION 363(m)**

25. Wilton Acquisition Corp., is a good-faith buyer and is entitled to the protections of Bankruptcy Code Section 363(m). Although the Bankruptcy Code does not define "good faith," courts have found that the good faith requirement of Bankruptcy Code Section 363(m) focuses primarily upon the disclosure of all material sale terms and the absence of fraud or collusion between bidders. *See, e.g., In re Abbotts Dairies*, 788 F.2d at 147-148; *see also In re Apex Oil Co.*, 92 B.R. 847, 869-871 (Bankr. M.D. Mo. 1988). It is typically only "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" that leads to a determination that there was a lack of good faith. *In re M Capital Corp.*, 290 B.R. 743, 748 n.3 (9th Cir. BAP 2003) (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985). As further discussed above, the sale was negotiated at arms length, the buyer has no material connection to any other party in interest and no special treatment for the Debtors or any insider is proposed. This Motion provides for an open and competitive auction. The Debtors are informed that Wilton Acquisition Corp. will execute a declaration to support its good faith pursuant to Paragraph 5 of the Court's Guidelines re Sale Orders.

**D. THE STAYS PROVIDED IN RULE 62(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE SHOULD BE WAIVED**

26. The Debtors request that the stays imposed by Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure be waived. All creditors and parties-in-interest have been provided with notice and afforded an opportunity to object, and no party will be prejudiced by waiver of the applicable stays.

**WHEREFORE**, the Debtors pray for an order as follows:

1. Granting the Motion and approving the sale to Wilton Acquisition Corp. or the party that makes the highest and best bid;

2. Approving the proposed bidding procedures;

3. Approving the broker's commission for The Carlton Group and authorizing the Debtor to pay the commission from escrow;

4. Authorizing the Debtors to consummate and carry out the sale and to make the expenditures and undertake the obligations and other matters reasonably necessary to close the sale;

5. Approving the sale free and clear of the lien asserted by MS Mission Holdings, with said liens to attach to proceeds of the sale in the same extent, validity and priority as under non-bankruptcy law;

6. Determining that Wilton Acquisition Corp. or the successful bidder is a good faith purchaser pursuant to Bankruptcy Code Section 363(m), if applicable;

7. Waiving the stays imposed by Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

8. For such other and further relief as is appropriate in the premises.

DATED: January 10, 2012                MACDONALD FERNANDEZ

By: /s/ Iain A. Macdonald
    Iain A. Macdonald
    Attorneys for Debtors-in-Possession