Entered on Docket
December 17, 2012

GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
FILED

NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY APPELLATE PANEL

#### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-11-1729-MkHPa |
| FIRST STREET HOLDINGS NV, LLC, et al., | Bk. No.   11-49300 (jointly administered with Bk. Nos. 11-49301, 11-70224, 11-70228, 11-70229, 11-70231, 11-70232, 11-70233 & 11-70234) |
| Debtors. | |
| FIRST STREET HOLDINGS NV, LLC; LYDIAN SF HOLDINGS, LLC; 78 FIRST STREET, LLC; 88 FIRST STREET, LLC; 518 MISSION, LLC; FIRST/JESSIE, LLC; JP CAPITAL, LLC; PENINSULA TOWERS, LLC; SIXTY-TWO STREET, LLC, | |
| Appellants, | |
| v. | MEMORANDUM* |
| MS MISSION HOLDINGS, LLC, | |
| Appellee. | |

Argued and Submitted on October 18, 2012
at San Francisco, California

Filed – December 5, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

Appearances:    Robert G. Harris, Esq. of Binder & Malter, LLP
argued for Appellants; Harvey A. Strickon, Esq. of
Paul Hastings LLP argued for Appellee.

Before:  MARKELL, HOLLOWELL and PAPPAS, Bankruptcy Judges.

---

*This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

# INTRODUCTION

Debtor First Street Holdings NV, LLC ("First Street") and its affiliates (collectively, "First Street Parties") seek review of an order granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2).[1] That order terminated the stay as to all of the First Street Parties' real property ("Properties"), which allowed the movant, secured creditor MS Mission Holdings, LLC ("Mission"), to proceed with foreclosure sales against the Properties. The order also terminated the stay as to all other property of the estate in which Mission held a security interest. For the reasons stated below, we VACATE AND REMAND for further proceedings.

# FACTS

## 1. The key players and the underlying loan transaction

In 2006, some of the First Street Parties entered into a loan agreement ("Loan") with Mission's predecessor in interest Capital Source Financing LLC ("CSF"). The purpose of the Loan was to enable the First Street Parties to refinance their acquisition of the Properties and to finance certain development planning costs. The First Street Parties hoped to obtain all of the entitlements and approvals necessary to permit themselves or a future owner of the Properties to tear down the existing buildings on the Properties and build new, higher-density, high-rise office, residential and hotel buildings. According to

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

Case: 11-49300   Doc# 213   Filed: 12/05/12   Entered: 12/17/12 12:17:51   Page 2 of 30

the First Street Parties, their prospective development plan was linked to the City and County of San Francisco's Transit Center District Plan.

Seven of the nine First Street Parties were borrowers under the Loan. The First Street Parties referred to these seven borrowing entities as the project-level entities (collectively, "Project Entities").[2] The other two First Street Parties essentially were holding companies (jointly, "Holding Entities").[3] Between them, the Holding Entities held all of the membership interests in the Project Entities ("Membership Interests").

The Loan was to be made in the principal amount of $67.1 million, and over $52 million was immediately funded at the time the Loan transaction closed. At the time of the filing of Mission's first relief from stay motion, Mission claimed that the outstanding Loan balance exceeded $95 million. For their part, the First Street Parties admitted that roughly $80 million was owed on the Loan as of the time of their bankruptcy filings. However, the First Street Parties claimed that the amount owed to Mission was subject to a number of different defenses, counterclaims, offsets and an equitable subordination claim, all of which would effectively reduce the net amount owed by a

_____

[2]The seven Project Entities were: (1) Sixty-Two First Street, LLC; (2) 78 First Street, LLC; (3) 88 First Street, LLC; (4) First/Jessie, LLC; (5) 518 Mission, LLC; (6) JP Capital, LLC; and (7) Peninsula Towers, LLC.

[3]The two Holding Entities were: (1) First Street Holdings NV, LLC; and (2) Lydian SF Holdings.

3

significant but unknown amount.[4]

Among other things, the Loan was secured by deeds of trust covering the Properties and by pledge agreements covering the Membership Interests.  Prior to the First Street Parties' bankruptcy filings, foreclosure was imminent on both the Properties and the Membership Interests.[5]

**2.   The bankruptcy filings and Mission's relief from stay motions**

The Holding Entities filed their chapter 11 bankruptcy cases on August 30, 2011, and the Project Entities filed their chapter 11 bankruptcy cases roughly one month later, in September 2011.

Mission soon filed motions for relief from stay in each of the bankruptcy cases, which the bankruptcy court consolidated for hearing and determination.[6]  Mission asserted that it was entitled to relief from stay on three independent grounds.  These

---

[4]The First Street Parties further admitted that they had defaulted on their interest-only payments under the Loan beginning in April 2008 and that the loan had matured in May 2009.

[5]The First Street Parties also claimed that Mission held a security interest in certain transferrable development rights allegedly worth $8 million ("TDR's").  Mission did not specifically address the TDR's in any of its relief from stay motions, nor did it talk about them in its appeal brief.  On the other hand, the language in the order granting Mission's relief from stay motion was broad enough to permit Mission to enforce any liens it had against any and all property of the estate, including the TDR's.  We cannot tell from the briefs of either side or from the record whether the TDR's have been foreclosed upon or whether Mission even has tried to foreclose upon the TDR's.

[6]For ease of reference, we collectively refer to all of Mission's relief from stay motions in the singular, as Mission's "relief from stay motion."

4

were: (i) § 362(d)(2), because the First Street Parties had no equity in the Properties and they were not necessary for an effective reorganization; (ii) § 362(d)(1), because cause existed due to a lack of adequate protection of Mission's interest in the Properties; and (iii) § 362(d)(1), because cause existed where the bankruptcy cases had been filed in bad faith.

The bankruptcy court held a preliminary hearing on October 5, 2011 and a scheduling conference on October 12, 2011, which produced various scheduling deadlines and a scheduling order. In setting its scheduling deadlines and issuing the scheduling order, the court endeavored to enable the parties to complete all reasonably necessary trial preparation in time for a final hearing to be held on December 1 and 2, 2011. If those dates were not sufficient, the court reserved an additional date of December 16, 2011 to be used if necessary.[7]

After the entry of the scheduling order, on November 9, 2011, the First Street Parties filed an objection to Mission's proof of claim. In addition, the First Street Parties filed an adversary complaint against CSF, Mission and others. In relevant part, the First Street Parties sought equitable subordination of Mission's claim. Both the equitable subordination complaint and the claim objection, however, were based on the same type of unsubstantiated allegations as were stated in the First Street Parties' opposition to the relief from stay motion.

More importantly, to bolster its argument that it had

---

[7]As discussed at length below, the scheduling deadlines and the bankruptcy court's scheduling order became a major source of contention, and our disposition of this appeal hinges on them.

5

realistic prospects of an effective reorganization, on
November 29, 2011, the First Street Parties filed a draft joint
disclosure statement and plan of reorganization.

The disclosure statement's plan summary identified the
following key plan terms:

- Substantive Consolidation of the First Street Parties'
  cases.
- Monthly payment of net rents to Mission beginning
  ninety days after plan confirmation ("Effective Date").
- On account of interest payments to be paid under the
  plan, a lump sum payment to Mission of up to $3 million
  at the end of the first year after the Effective Date,
  and a lump sum payment of up to $5.5 million at the end
  of the second year after the Effective Date.
- The amount of the lump sum payments to be made under
  the plan would be based on the difference between the
  applicable market rate of interest as determined by the
  court and the net rents paid to Mission.
- A final lump sum payment to Mission on the three-year
  anniversary of the Effective date, which payment would
  fully pay off the remaining balance owed to Mission,
  including all remaining interest, fees and charges
  owed, but also after liquidating and accounting for all
  defenses, counterclaims and offsets that the First
  Street Parties claimed to hold against Mission.
- Funding of the Plan by renting out all existing and
  future rental space available in the buildings on the
  Properties.

## 3. The final relief from stay hearing

The final hearing on Mission's relief from stay motion was held as scheduled on December 1 and 2, 2011. The tenor of the proceedings shifted significantly, however, when the bankruptcy court granted Mission's motions in limine seeking to exclude all of the testimony of the First Street Parties' non-appraiser expert witnesses. The bankruptcy court excluded this testimony on the basis that the First Street Parties had not timely disclosed their intent to call any non-appraiser experts as witnesses. In holding that the disclosure was untimely, the court relied upon an oral scheduling deadline that was not included in the court's written scheduling order.

The court did allow non-expert declarations in lieu of live direct testimony, and heard live testimony on cross-examination and on redirect examination from Mission's percipient witness John Herr and from the First Street Parties' percipient witness David Choo.[8] The court also heard the expert testimony of Mission's appraiser Robert Farwell ("Farwell") and of the First Street Parties' appraiser Donn Byrne, Jr. ("Byrne"). The court accepted into evidence both expert appraisals.

The bankruptcy court stated its ruling on valuation of the Properties at the beginning of the second day of trial, on December 2, 2011. The court found that both appraisers were good expert witnesses and that they had submitted good appraisal

---

[8]The bankruptcy court excluded most of Choo's direct testimony when it granted Mission's motions in limine numbers 2 & 3. The First Street Parties challenged these evidentiary rulings on appeal, but in light of our disposition of this appeal, we do not need to reach this issue.

7

reports. But the court ultimately held that it would accept Farwell's $70.7 million valuation of the Properties "as being the best evidence as to what the current value of the subject property at the time this motion for relief from stay was filed and is being determined . . . ." Trial Trans. (Dec. 2, 2011) at 7:5-8.

Critical to this appeal, the bankruptcy court essentially rejected Byrne's $140 million valuation as being too speculative and hypothetical:

> [W]hat troubled the Court were the specific assumptions that Mr. [Byrne] was required to make. Specifically, he was to assume that the draft EIR,[9] which is Exhibit #4, had been [approved], and he was to make specific assumptions about the square footage about the building, effectively, or the -- what could be built upon, which is approximately a seven-fold increase of the existing floor space of existing buildings on the Debtors' properties. And in doing that, he came up with a hypothetical valuation of $140 million.
>
> The problem is, as is also set out in the draft EIR, in the intended uses of the EIR and the approvals required, Mr. [Byrne] acknowledged that there were still 14 points, which are set out at Page 49 of the draft EIR, I believe it's in Chapter 2, the Project Description under Subsection "Intended Use of the EIR, Proof or Requirements" that had not been made. There still needed to be amendments to the general plan, a determination of the consistency of the proposed general plan amendments and the rezoning of the general plan and Planning Code Section 1.1.1 of the priority policies of the Planning Commission, amendments of the Planning Code to create new height in both districts greater than the current maximum 550 feet, establish building set-back, separation of tower requirements to the buildings taller than 550 feet, and it goes on from there.

---

[9]The draft EIR (hereinafter referred to as the "EIR") was issued by the City and County of San Francisco's Planning Department in conjunction with their draft Transit Center District Plan. Both of these documents are discussed in more detail in our merits discussion, infra.

8

Trial Trans. (Dec. 2, 2011) at 4:22-5:19; see also id. at 5:20-
6:15 (listing numerous other EIR contingencies). However, if the
bankruptcy court had admitted the excluded non-appraiser expert
testimony, much of Byrne's $140 million valuation could have been
corroborated.

For purposes of determining whether the First Street Parties
had any equity in the Properties, the bankruptcy court found that
the First Street Parties had admitted in a verified complaint
they filed in state court that the minimum amount owed to Mission
was $77.9 million.

Also critical to this appeal, the bankruptcy court rejected
the First Street Parties' argument that the amount of Mission's
claim for purposes of determining equity in the Properties should
be reduced on account of the First Street Parties alleged
defenses, offsets, counterclaims and First Street's equitable
subordination claim. The court rejected this argument in part
because, having granted the motion in limine excluding the First
Street Parties' non-appraiser expert testimony, the First Street
Parties had offered no admissible evidence to support their
alleged defenses, offsets, counterclaims and equitable
subordination claim.

The bankruptcy court also found that the First Street
Parties had not proven that they had a reasonable possibility of
an effective reorganization within a reasonable time. The court
noted that the proposed plan likely qualified as a negative
amortization plan, which would be difficult to confirm under the
best of circumstances. The court also noted that the Properties
as of the time of the hearing did not generate enough monthly

9

rents to pay monthly operating expenses and property taxes.  The
court also doubted that the First Street Parties could raise
sufficient plan funding, as they had proposed, by renting out
additional available space in the buildings on the Properties.

The bankruptcy court also based its reorganization finding
on the EIR contingencies and on the speculative nature of the
First Street Parties' development plans:

> Frankly, there are just too many uncertainties that
> exist at this time.  As the Court has noted with
> respect to the draft EIR, there are still 14 hurdles
> that need to be overcome before the draft EIR can be
> confirmed.  And there's been argument that the draft
> EIR might be approved within the next three to four
> months, but again, there's testimony that it should
> have been approved over two years ago.  And given the
> present economy in San Francisco and Northern
> California and the country as a whole, the Court has
> serious concerns whether it would be serious money that
> would come in to try to develop such a project within
> the next three, four or five years, if at all, unless
> things markedly improve, especially here in the San
> Francisco Bay Area.

Trial Trans. (Dec. 2, 2011) at 113:20-114:7.

The bankruptcy court ruled against alternately granting
relief from stay on the grounds of bad faith.  According to the
court, there had been no showing of bad faith by the First Street
Parties.

But the bankruptcy court did alternately grant relief from
stay under § 362(d)(1) based on lack of adequate protection.  The
court explained:

> Section 363(e) of the Bankruptcy Code requires that the
> Debtors provide adequate protection to Movant as a
> condition of the Debtor's use of the property. The
> Debtor's revenue stream from the property is
> insufficient to even cover operating expenses, as
> previously noted, let alone to provide adequate
> protection to Movant, and the Debtors have no other
> source of income other than the proposed sale of
> possibly the 81st property or the TDRs. The Debtors

10

have no assets from which to make postpetition payments
to any party, and no equity cushion exists to protect
the Movant.

Trial Trans. (Dec. 2, 2011) at 115:3-12.[10]

The bankruptcy court entered its order granting relief from
stay on December 7, 2011, and the First Street Parties timely
appealed on December 20, 2011.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.
§§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C.
§ 158, subject to the discussion set forth immediately below.

During the course of this appeal, after the First Street
Parties advised the Panel that Mission had completed its
foreclosure sales of the Properties, the Panel issued an order
directing the First Street Parties to explain why the foreclosure
sales did not render this appeal moot. After the First Street
Parties responded, a motions panel issued an order deeming the
mootness issue satisfied.

We adopt the motions panel's mootness ruling. Generally
speaking, an appeal from an order denying or terminating an
injunction becomes moot when the action sought to be enjoined

---

[10]This ruling did not seem to be in accord with the facts.
As an apparently undersecured creditor, Mission only was entitled
to adequate protection payments to the extent its interest in the
Properties was depreciating from the petition date. See First
Fed. Bank of Cal. v. Weinstein (In re Weinstein), 227 B.R. 284,
296 (9th Cir. BAP 1998) (citing United Sav. Ass'n of Tex. v.
Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 382
(1988)). The bankruptcy court made no finding that the
Properties were depreciating, nor are we aware of any evidence in
the record to that effect. Nonetheless, in light of our
disposition of this appeal, we need not further address the
bankruptcy court's adequate protection ruling.

11

already has occurred.  <u>Vegas Diamond Props., LLC v. F.D.I.C.</u>,
669 F.3d 933, 936 (9th Cir. 2012); <u>see also</u> <u>Murphy v. Hunt</u>,
455 U.S. 478, 481 (1982) (holding that a case typically becomes
moot when the issue presented no longer is "live" or when the
parties lack a cognizable interest in the case's outcome).

    Notwithstanding the sale of the Properties here, we have no
evidence of the sale of the other collateral securing Mission's
claim.  No one has advised us that all of the Membership
Interests or the TDR's have been sold.  As a result, we cannot
conclude that this appeal is moot.  <u>Cf.</u> <u>Motor Vehicle Cas. Co. v.</u>
<u>Thorpe Insulation Co. (In re Thorpe Insulation Co.)</u>, 677 F.3d
869, 882 (9th Cir. 2012) (stating that the party seeking
dismissal of an appeal based on mootness must demonstrate that
the appeal is moot).  Accordingly, we will proceed to consider
the merits of the appeal.[11]

ISSUES

    1.  Did the bankruptcy court abuse its discretion when it
granted Mission's relief from stay motion?

    2.  Did the bankruptcy court abuse its discretion when it
excluded the expert testimony of the First Street Parties'
non-appraiser experts?

---

[11]We must acknowledge that our conclusion regarding mootness
leaves us with little satisfaction.  Given that all of the
Properties have been foreclosed upon, the potential that
remanding this matter would have any practical or beneficial
impact on any party seems remote.  Nonetheless, in light of the
established standard of proof for declaring a matter moot, we see
no alternative to the conclusion we have reached.

12

## STANDARDS OF REVIEW

2      This Panel reviews the bankruptcy court's relief from stay

3 order for abuse of discretion.  <u>First Yorkshire Holdings, Inc. v.</u>

4 <u>Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)</u>,

5 470 B.R. 864, 868 (9th Cir. BAP 2012).  This Panel also reviews

6 the bankruptcy court's evidentiary rulings for abuse of

7 discretion.  <u>Johnson v. Neilson (In re Slatkin)</u>, 525 F.3d 805,

8 811 (9th Cir. 2008) (citing <u>Latman v. Burdette</u>, 366 F.3d 774, 786

9 (9th Cir. 2004)).

10      Under the abuse of discretion standard of review, we first

11 "determine de novo whether the [bankruptcy] court identified the

12 correct legal rule to apply to the relief requested." <u>United</u>

13 <u>States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

14 And if the bankruptcy court identified the correct legal rule, we

15 then determine under the clearly erroneous standard whether its

16 factual findings and its application of the facts to the relevant

17 law were: "(1) illogical, (2) implausible, or (3) without support

18 in inferences that may be drawn from the facts in the record."

19 <u>Id.</u> (internal quotation marks omitted).

20                              DISCUSSION

21      We first consider the First Street Parties' contention that

22 the bankruptcy court improperly excluded the testimony of their

23 non-appraiser experts.

24      At the December 1, 2011 hearing, the bankruptcy court

25 granted Mission's motions in limine which sought to exclude the

26 declaration testimony of the First Street Parties' four

27 non-appraiser expert witnesses (collectively, "Non-Appraiser

28 Experts").  The court held that the First Street Parties had not

timely disclosed their intent to call the Non-Appraiser Experts
as witnesses. According to the court, this lack of timely
disclosure justified the exclusion of all Non-Appraiser Expert
testimony.

The First Street Parties' Non-Appraiser Experts included:

1.    John Graziano ("Graziano") – a real estate broker who
      described himself as an expert regarding the servicing
      of commercial real estate loans and who proposed to
      testify regarding CSF's allegedly improper servicing of
      the Loan.

2.    Randy Sugarman ("Sugarman") - who described himself as
      a Certified Public Accountant, a Certified Fraud
      Examiner, and a Certified Insolvency and Reorganization
      Accountant. Sugarman proposed to testify regarding,
      among other things, Mission's accounting of the amount
      it claimed was owed under the Loans.

3.    D. Paul Regan ("Regan") - who described himself as a
      Certified Public Accountant and a Certified Fraud
      Examiner. Similar to Sugarman, Regan proposed to
      testify regarding the accounting on which Mission's
      claim was based.

4.    Michael J. Burke ("Burke") who described himself as a
      licensed attorney with over thirty years of experience
      in land use development, zoning, and real estate law in
      San Francisco.

Burke's proposed testimony seemed particularly pertinent to
the parties' ongoing dispute over valuation of the Properties,
which in turn implicated the court's findings on several key

14

issues, including the First Street Parties' lack of equity in the
Properties, the First Street Parties' prospects for an effective
reorganization, and whether Mission's interest in the Properties
was adequately protected. Burke's proposed expert testimony
offered a relatively straightforward explanation of the alleged
link between the various draft development plans affecting the
Properties and the value of the Properties.

More specifically, Burke was prepared to testify regarding
what he described as the impending approval of San Francisco's
Draft Transit Center District Plan ("TCD Plan") and the impending
certification of the EIR accompanying the TCD Plan. According to
Burke, "[i]t is inconceivable to me that the [TCD Plan] will not
be adopted." Burke Decl. (Nov. 18, 2011) at ¶ 7.

Furthermore, Burke predicted that the San Francisco Planning
Commission would certify the EIR by February 2012 and that the
San Francisco Board of Supervisors would approve the TCD Plan by
April or May 2012. Id. at ¶¶ 8, 11. Burke further stated that
the approval of the TCD Plan would result in the rezoning of the
TCD Plan area, which included the site on which the First Street
Parties' Properties were located (referred to in Burke's
declaration as the "50 First Street Site"). Id. at ¶ 3. As Burke
put it, the rezoning would, in turn, immediately increase the
value of the Properties because the rezoning would increase the
permitted development density on the Properties by raising both
existing height limits and Floor-to-Area Ratio limits, known as
"FARs." Id. at ¶¶ 5, 6.

We have painstakingly reviewed the record in order to fully
understand all of the events leading up to the bankruptcy court's

exclusion of the Non-Appraiser Expert testimony.  The most
significant events included:

- The status and scheduling conference held on October 12,
  2011;[12]
- The scheduling order entered on October 14, 2011;
- The motion to correct or clarify the October 14 scheduling
  order filed by Mission on November 7, 2011;
- The order amending the October 14 scheduling order entered
  on November 9, 2011;
- The First Street Parties' November 17, 2011 motion to
  correct or clarify the amended scheduling order;
- The order denying the First Street Parties' November 17
  motion entered on November 18, 2011;
- The First Street Parties' November 17 and 18, 2011 filing
  and service of their Non-Appraiser Expert Declarations;
- Mission's November 29, 2011 motions in limine numbers 5 - 8;
- The First Street Parties' November 30, 2011 opposition to
  the motions in limine;
- The December 1, 2011 hearing on motions in limine numbers
  5 - 8, held in the midst of the final relief from stay
  hearing.

---

[12]The record does not include an official transcript of the
October 12 Conference, but it does include an unofficial
transcript prepared and offered by the First Street Parties
("October 12 Transcript").  Mission has not objected to the
October 12 Transcript or challenged its accuracy, so we will
accept it as a generally accurate transcription of the October 12
Conference.  While there are certain apparent omissions and
inaccuracies, the key points and themes are reiterated several
times and there can be no reasonable doubt as to what materially
transpired.

16

Recounting all of the tortuous facts arising from these events would be unduly lengthy and confusing, so this Panel instead will focus on the key points – those essential facts which are not subject to reasonable dispute and on which our decision hinges.[13]

At the October 12 scheduling conference, the bankruptcy court repeatedly expressed concern regarding its duty under § 362(e)(1) to hold the final relief from stay hearing within thirty days of the preliminary hearing. The court was aware of no compelling circumstances that would have permitted it to extend the final hearing beyond December 1, 2 and 16, 2011, which were the first three days available on the bankruptcy court's calendar for the court to hear the matter. The First Street Parties have not challenged the court's determination that it needed to hear the matter on the first dates it had available.

With the concern regarding § 362(e)(1) in mind, the bankruptcy court orally stated at the October 12 conference various deadlines for disclosure of witnesses, the exchange of witness declarations, the deposing of witnesses, and so on.

The bankruptcy court's October 14, 2011 scheduling order did not track what the court stated on the record on October 12. This scheduling order not only was internally inconsistent but also was inconsistent with the various deadlines the court orally stated on October 12. Despite this, Mission waited until November 7, 2011 to file a motion addressing these problems with

_____

[13]A full narrative summary of relevant events and documents is attached to this decision as an Appendix.

17

the October 14 scheduling order. In response, the bankruptcy
court revised its October 14 scheduling order on November 9.

The First Street Parties waited even longer, until
November 17, 2011, to file their motion to correct or clarify the
October 14 scheduling order, as amended by the court on
November 9, 2011. According to the First Street Parties, they
were not concerned about the contents of the October 14
scheduling order until the court amended that order on
November 9, 2011.

Before the First Street Parties filed their Non-Appraiser
Expert declarations on November 17 and 18, 2011, they made no
attempt to disclose the identity or existence of their
Non-Appraiser Experts. This conduct was inconsistent with:
(1) the bankruptcy court's oral deadline, stated on October 12,
2011, for both parties to disclose their expert and non-expert
witnesses by no later than October 31, 2011; and (2) the general
intent of the court to have both parties avoid unnecessary
surprises and delay by disclosing the identity of all of their
witnesses, expert and non-expert, as soon as practicable.

In excluding all of the First Street Parties' Non-Appraiser
Expert testimony, the bankruptcy court in essence relied upon and
enforced its oral deadline, stated on October 12, 2011, for both
parties to disclose their expert and non-expert witnesses by no
later than October 31, 2011. But there was nothing on the face
of the October 14 scheduling order providing any deadline for
disclosing the identity of non-appraiser experts. When the court
amended the October 14 scheduling order on November 9, 2011, it
sua sponte deleted any provision that would have permitted either

18

side to identify any non-appraiser expert witness. This too amounted to enforcement of the October 12 oral scheduling deadlines. As far as the court was concerned, the parties had in essence waived their right to call any non-appraiser expert witnesses by not disclosing them by October 31, 2011.

With these facts and circumstances in mind, we must hold that the court erred as a matter of law when it excluded the First Street Parties' Non-Appraiser Expert testimony. We know of no rule or case authority that permits a court to exclude a significant portion of a party's evidence as a means of enforcing an oral scheduling deadline when the court did not include that deadline in its subsequent written scheduling order. As a matter of law, a formal written order controls over an inconsistent oral ruling. See Cashco Fin. Servs., Inc. v. McGee (In re McGee), 359 B.R. 764, 774 n.9 (9th Cir. BAP 2006); see also Rule 9021 (stating that judgments and orders are effective when entered on the docket by the clerk).

The October 14 scheduling order contained a provision, paragraph 10(b), which permitted the parties to file and serve non-appraiser expert declarations by no later than November 29, 2011. But the same order did not contain any deadline for either side to disclose the identities of the non-appraiser expert witnesses who would provide these declarations. Thus, by omitting the disclosure deadline, the October 14 scheduling order was inconsistent with the bankruptcy court's October 12 oral scheduling deadlines.

Neither side has cited us to any rule or case authority that would permit the type of deadline enforcement the bankruptcy

19

court employed here.  The Rules, Civil Rules and cases the parties cite are inapposite because they all involve deadlines, requirements or restrictions written into the rules themselves or contained in a written order of court.  See, e.g., Rules 7016, 7026 and 7037 (incorporating Civil Rules 16, 26 and 37); Price v. Syedel, 961 F.2d 1470, 1474 (9th Cir. 1992).[14]

While the First Street Parties did not specifically couch their challenge to the bankruptcy court's evidentiary ruling in due process terms, the issue raised is fundamentally one of a lack of due process.

Due process requires reasonable notice and a meaningful opportunity to be heard.  See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); Berry v. U.S. Tr. (In re Sustaita), 438 B.R. 198, 210 (9th Cir. BAP 2010), aff'd, 460 Fed. Appx. 627 (9th Cir. 2011) ("prior to sanctioning a party, the court must provide the party to be sanctioned with particularized notice to comport with due process.").

---

[14]We note the additional problem that the most relevant rule cited, Rule 7016, only applies in Rule 9014 contested matters when the court explicitly directs that it will apply. See Rule 9014(c).  There was no such explicit direction here. Nonetheless, if the October 12 oral scheduling deadline had been included in the October 14 scheduling order, we suspect that the bankruptcy court properly could have enforced that deadline under Rule 7016 even if the court had not explicitly designated Rule 7016 for application in this contested matter.  See Adams v. Dorsie's Steak House, Inc. (In re Dorsie's Steak House, Inc.), 130 B.R. 363, 365-66 (D. Mass. 1991).

20

In light of all of the circumstances set forth above, we cannot conclude that the First Street Parties had reasonable or particularized notice of the bankruptcy court's intention to enforce the October 12 oral scheduling deadline as if it had been included in the October 14 scheduling order. Nor can we conclude that the First Street Parties had a meaningful opportunity to be heard when the court excluded all of their Non-Appraiser Expert testimony based on their noncompliance with the oral scheduling deadline.[15]

Furthermore, we are persuaded that the bankruptcy court's error was not harmless.[16] The proposed testimony of the

---

[15] We further note that, in their November 17, 2011 motion to correct or clarify the amended version of the October 14 scheduling order, the First Street parties suggested that a brief extension of the deadline to depose their Non-Appraiser Experts would remedy any prejudice to Mission. However, the bankruptcy court's November 18, 2011 order denying the First Street Parties' November 17, 2011 motion indicates that the bankruptcy court refused to consider the extent of prejudice to Mission, whether that prejudice could have been remedied by a brief extension of the discovery deadline, or whether any sanction less than the exclusion of all Non-Appraiser Expert testimony would have sufficed under the circumstances to enable to court to maintain control over its docket and to ensure the timely and fair resolution of Mission's relief from stay motion. Even if the October 12 oral scheduling deadline had been enforceable under Rule 7016, it would have been appropriate for the bankruptcy court to consider these types of issues before excluding all of the Non-Appraiser Expert testimony. See generally Price, 961 F.2d at 1474 (listing factors the trial court must consider before excluding unlisted witnesses).

[16] In order to reverse based on either an erroneous evidentiary ruling or on a due process violation, we must conclude that the appellant was prejudiced. See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776 (9th Cir. 2008); Harper v. City of Los Angeles, 533 F.3d 1010, 1030 (9th Cir. 2008).

Case: 11-49300    Doc# 213    Filed: 12/05/12    Entered: 12/17/12 12:17:51    Page 21 of 30

1 Non-Appraiser Experts, particularly Burke's expert testimony,
2 likely could have influenced a number of key determinations of
3 the bankruptcy court, including its determinations: (1) that the
4 First Street Parties had no equity in the Properties, (2) that
5 the First Street Parties did not have a realistic prospect for an
6 effective reorganization, and (3) that Mission did not have
7 adequate protection of its interest in the Properties.

8 　　We acknowledge that Mission also sought to exclude
9 significant portions of the Non-Appraiser expert testimony on
10 alternate grounds, such as hearsay, lack of foundation and
11 relevance.  However, the bankruptcy court did not rule on these
12 alternate grounds for exclusion, and this Panel declines to do so
13 in the first instance on appeal.  On remand, the bankruptcy court
14 remains free to make its own determinations on these alternate
15 grounds for exclusion, and we express no opinion on their proper
16 disposition.

17 **CONCLUSION**

18 　　For all of the reasons set forth above, we VACATE the order
19 granting relief from the automatic stay and REMAND this matter to
20 the bankruptcy court for further proceedings.

21

22 Appendix Follows

23

24

25

26

27

28

22

# APPENDIX

## NARRATIVE SUMMARY OF EVENTS LEADING TO EXCLUSION

## OF THE FIRST STREET PARTIES' NON-APPRAISER EXPERT TESTIMONY

The bankruptcy court held a preliminary hearing on the relief from stay motion on October 5, 2011. At that preliminary hearing, the court set a status and scheduling conference for October 12, 2011 ("October 12 Conference"). This conference played a pivotal role in this controversy.[17] During the course of the October 12 Conference, the court orally stated that it was going to set the following schedule leading up to and including the final relief from stay hearing or "trial."

**October 14, 2011:** Mission to file and serve an accounting for its claim and their expert appraisal report;

**October 31, 2011:** Both Parties to disclose any non-appraiser witnesses for trial (estimated at the time by the parties as one or two other witnesses per side);

**November 18, 2011:** The First Street Parties to file and serve their expert appraisal report, and both parties to file and serve all other witness declarations;

---

[17]The record does not include an official transcript of the October 12 Conference, but it does include an unofficial transcript prepared and offered by the First Street Parties ("October 12 Transcript"). Mission has not objected to the October 12 Transcript or challenged its accuracy, so we will accept it as a generally accurate transcription of the October 12 Conference. While there are apparent omissions and inaccuracies from time to time, the key points and themes are reiterated several times and there can be no reasonable doubt as to what materially transpired.

Case: 11-49300   Doc# 213   Filed: 12/05/12   Entered: 12/17/12 12:17:51   Page 23 of 30

| 1 | **November 21-25, 2011:** | Witness depositions |
| 2 | **November 25, 2011:** | Discovery cutoff |
| 3 | **December 1 & 2, 2011:** | Trial (with an additional day of |
| 4 | | December 16, 2011, held in reserve) |

5  See October 12 Transcript at pp. 7-10.

6      Significantly, at the time of the October 12 Conference, the

7  court clearly intended disclosure of all witnesses by no later

8  than October 31, 2011.  For their part, the First Street Parties

9  represented that, as of the time of the October 12 Conference,

10  they had no idea as yet what other witnesses besides their

11  appraiser they would call.  They proposed a deadline for

12  disclosing all witnesses of one week before trial, but the

13  bankruptcy court explicitly rejected that deadline and instead

14  orally stated that it would set an October 31 deadline:

15      Judge: So, Mr. Macdonald, I know you may or may not
    have an appraisal done but as far as other parties who

16      do you . . . do you have an idea at this point who you
    will be calling?

17

18      Macdonald [the First Street Parties's Counsel]: No I
    don't.  Usually the scheduling order with the courts of
    this district witnesses are disclosed a week before.

19

20      Judge: I'm just trying to have no surprises as far as
    if they are going to depose Mr. Choo or Mr. Graham. I

21      didn't know if there was anybody else. I'm just trying
    to get this down to expedite the discovery process and

22      so there is no surprises and give you as much time as I
    can to get an appraisal and so you can take the

23      appraiser deposition.  If you aren't in a position to
    say, simply just say today and then set a date at this

24      point.

25      Macdonald: No, I'm not.

26      Judge: I would guess an early date for the designation
    of witnesses.

27      Macdonald: How about October 31st?

28      Strickon [Mission's counsel]:  I'm not saying we have

24

```
  1   to designate a specific appraiser, but whoever the
      debtors' appraiser.
  2
      Judge: No, I think that is more than fair.  The 31st.
  3   So Mr. Macdonald would designate -- both sides would
      designate any witnesses -- expert and . . . .
  4
      Macdonald: No.
  5
         *        *        *
  6
      Judge: I'm just going to say that you have until
  7   October 31 to identify any witness, the witness who
      will testify and it's not to give a whole laundry list,
  8   it's simply who you intend on calling . . . .

  9 October 12 Transcript at p. 7.

 10     Moreover, the bankruptcy court repeatedly expressed its

 11 overarching concerns that Mission was entitled by law[18] to an

 12 expeditious final hearing as soon as practicable and that the

 13 court needed to nail down as much as possible as quickly as

 14 possible in order to avoid unnecessary surprises and delay in the

 15 discovery and pretrial process.  The following statement is

 16 typical of the court's commentary:

 17   Judge:  The expected problem is that we are looking at
      the property is appreciating.  I don't know if it is or
 18   isn't.  There is nothing being paid as adequate
      protection to its creditors.  The situation technically
 19   they're entitled to have a hearing within 30 days of
      their initial preliminary hearing and set forth
 20   compelling reason to the court.  The only one that I
      have is basically my schedule and those are the initial
 21   dates that I have [December 1 and 2, 2011]. That's the
      earliest I can get the parties into it.  The debtor has
 22   to realize that they filed the bankruptcy and they were
      going to be faced with a relief from stay motion that
 23   may not have gotten formal appraisals.

 24 October 12 Transcript at p. 5.[19]

 25 ───────────────────

 26     [18]See § 362(e)(1).

 27     [19]The First Street Parties have not challenged the
    bankruptcy court's interpretation of § 362(e)(1), nor have they
 28                                            (continued...)
```

25

On October 14, 2011, the bankruptcy court entered its scheduling order based on the October 12 Conference. Unfortunately, the October 14 scheduling order contained a number of deadlines that created internal inconsistencies in the document and that were inconsistent with what the court orally ruled at October 12 Conference. The most pertinent and problematic paragraphs were paragraphs 4 and 10(b)(i). The following chart summarizes the key differences between the bankruptcy court's October 12 oral ruling, paragraph 4 of the October 14 scheduling order and paragraph 10(b)(i) of the October 14 scheduling order:

|  | OCTOBER 12 ORAL RULING | OCTOBER 14 ORDER, ¶ 4 | OCTOBER 14 ORDER, ¶ 10(b)(i) |
|---|---|---|---|
| 10/31/11 | Parties to disclose all non-appraiser witnesses, both expert and non-expert | Parties to disclose all non-expert witnesses and to exchange non-expert decls. and exhibit lists | N/A |
| 11/18/11 | Parties to file and serve all non-appraiser witness decls. | N/A | N/A |
| 11/29/11 | N/A | N/A | Parties to file and serve all witness decls., both expert and non-expert |

In accordance with the October 14 scheduling order, the First Street Parties filed and served on October 31, 2011, a non-expert witness list naming three percipient witnesses. Mission

---

[19](...continued)
argued that there were other compelling reasons why the court should have delayed the final hearing from December 1 & 2, 2011.

26

Case: 11-49300   Doc# 213   Filed: 12/05/12   Entered: 12/17/12 12:17:51   Page 26 of 30

did not file anything on October 31, 2011.  The next thing
Mission filed was a motion, on November 7, 2011, seeking
correction under Civil Rule 60(a) of "clerical errors" in the
October 14 scheduling order.  The bankruptcy court entered an
order on November 9 only partially granting Mission's motion.[20]
The court acknowledged that corrections were necessary, and
apparently concluded that some extension of the deadlines with
respect to non-expert witnesses was necessary in order to remedy
any confusion caused by internal inconsistencies in the
October 14 scheduling order.  Accordingly, the court's November 9
order extended the deadline in paragraph 4 for both disclosure
and declarations of non-expert witnesses from October 31, 2011 to
November 15, 2011.  In addition, the November 9 order deleted
paragraphs 10(b) and 10(c) essentially for two reasons:
(1) because these provisions were inconsistent with its
October 12 oral ruling and (2) because the court was still
committed to completing the discovery and pretrial process in an
expedited fashion that would allow trial to proceed on December 1
and 2, 2011.

     The net effect of the bankruptcy court's November 9, 2011
amendments to the October 14 scheduling order was to sua sponte
omit any and all provisions for disclosure of non-appraiser
expert witnesses.  Apparently, with respect to non-appraiser
experts, the bankruptcy court intended to hold the parties to the
deadline it had stated in its October 12 oral ruling, requiring

_____

     [20]Contrary to the bankruptcy court's October 12 rulings,
Mission advocated in its November 7 motion that paragraph 10 was
"right" and paragraph 4 was "wrong."

Case: 11-49300   Doc# 213   Filed: 12/05/12   Entered: 12/17/12 12:17:51   Page 27 of
30

both parties to disclose all non-appraiser experts by October 31, 2011, even though no such deadline had been set forth in the October 14 scheduling order. The court apparently concluded that, since no party had disclosed any non-appraiser experts by October 31, 2011, no provision for them was necessary in the amended scheduling order.

The First Street Parties did not offer any immediate response either to Mission's November 7, 2011 motion to clarify or to the bankruptcy court's November 9, 2011 order. Moreover, the First Street Parties never disclosed the identities of their Non-Appraiser Experts before they filed and served their Non-Appraiser Expert declarations on November 17 and 18, 2011.

Instead, on November 17, 2011, the First Street Parties filed their own motion to correct or clarify the amended scheduling order. According to the First Street Parties, the amended scheduling order erroneously omitted any provision for Non-Appraiser Experts, and they requested, among other things, a new deadline of November 18, 2011 for filing and serving their Non-Appraiser Expert declarations, as well as a brief extension of the discovery cutoff in order to give Mission an opportunity to depose their Non-Appraiser Experts. Notably, the First Street Parties still did not disclose at this late date the identities of their Non-Appraiser Experts, for whom it intended to file and serve declarations the very next day.

The bankruptcy court entered an order on November 18, 2011 denying the First Street Parties' November 17, 2011 motion to correct. The court based this denial on the following factors: 1. The First Street Parties represented to the court at the

28

October 12, 2011 Conference that it had no non-appraiser experts to designate as witnesses;[21]

2.  The court relied on the First Street Parties' supposed representation in issuing its October 14, 2011 scheduling order (but as noted above, there was no indication in that order or in the November 9, 2011 amendments thereto of any deadline for designating non-appraiser experts);

3.  During the next month after the issuance of the October 14 scheduling order, the First Street Parties neither sought amendment of the scheduling order nor disclosed the existence or identities of their Non-Appraiser Experts.

The First Street Parties went ahead and filed and served one of their Non-Appraiser Expert declarations on November 17, 2011, and the rest on November 18, 2011.

Mission never deposed the Non-Appraiser Experts. Instead, on November 29, 2011, Mission filed its motions in limine numbers 5 - 8, seeking to exclude all testimony of the Non-Appraiser Experts on the ground that the submission of their testimony contravened the October 14 scheduling order and the November 18, 2011 order denying the First Street Parties' November 17, 2011 motion to correct.[22]   The First Street Parties filed an

_____

[21]This is a misstatement of the record.  Both the unofficial October 12 Transcript and the bankruptcy court's later comments at trial reflect that the First Street Parties actually represented on October 12 that they did not know yet whether they would seek to call any non-appraiser experts.

[22]Mission also argued that portions of the Non-Appraiser Expert declaration testimony should be excluded on hearsay, relevance and foundation grounds.  But the bankruptcy court never ruled on these grounds.

29

1  opposition to the motions in limine on November 30, 2011.

2          During trial, the bankruptcy court granted Mission's motions

3  in limine numbers 5 - 8, and excluded all of the Non-Appraiser

4  Expert Testimony.  The court noted that, starting with the

5  issuance of the October 14 scheduling order and through the

6  amendment of that order on November 9, 2011, and up to the filing

7  of the First Street Parties' November 17 motion to correct, the

8  First Street Parties were content to not disclose whether they

9  would be offering any non-appraiser expert testimony, even though

10 the dates on their Non-Appraiser Expert declarations reflect that

11 they knew at least by early November that they would be using at

12 least some non-appraiser expert testimony.  The court also

13 expressed concern that, even after the court amended the

14 scheduling order on November 9, 2011, omitting any provision for

15 non-appraiser expert testimony, it still took the First Street

16 Parties eight days to address the issue by filing their

17 November 17, 2011 motion to correct.

18

19

20

21

22

23

24

25

26

27

28