# EXHIBIT "B"

ORIGINAL

## OMNIBUS RELEASE AND ASSIGNMENT AGREEMENT

THIS OMNIBUS RELEASE AND ASSIGNMENT AGREEMENT ("Agreement") is dated as of May [__] 2013, for reference purposes only, and is made by and among FM Owner LLC, a Delaware limited liability company ("TMG/Northwood") and First Street Holdings NV, LLC, Lydian SF Holdings, LLC, 78 First Street, LLC, 88 First Street LLC, 518 Mission, LLC, First/Jessie, LLC, JP Capital, LLC, Peninsula Towers, LLC and Sixty-Two First Street, LLC (collectively and individually, jointly and severally, the "Debtor Entities") and David Choo, an individual ("Choo"), and Marcus Heights, LLC ("Marcus Heights"). The Debtor Entities, Choo and Marcus Heights shall be referred to in this Agreement, collectively and individually, jointly and severally, as the "Choo Parties". This Agreement shall be effective on the "Effective Date", which is the date on which the last person signing this Agreement shall have executed and delivered this Agreement.

### RECITALS:

This Agreement is entered into on the basis of the following facts, understandings and intentions of the parties:

A.   MS Mission Holdings, LLC ("MS") is the current record titleholder of fee simple interests in those certain parcels of real property commonly known as 50 First Street, 62 First Street, 78 First Street, 88 First Street, 512 Mission Street, 516 Mission Street and 526 Mission Street, located in San Francisco, California and consisting of four (4) non-contiguous mixed use buildings and one (1) empty lot, as described more particularly on Exhibit A attached hereto (including all buildings, structures, fixtures and other improvements located thereon (the "Improvements")) (collectively, the "Real Property"). MS acquired title from the Debtor Entities at a foreclosure sale on or about January 12, 2012 (the "Foreclosure Date"), the legal validity of which Debtor Entities contest in litigation defined below as the State Court Action and the Bankruptcy Cases.

B.   MS also is the current holder of the membership interests of JP Capital, LLC and Peninsula Towers, LLC (two of the Debtor Entities executing this Agreement (the "TDR LLC's")) which own Two Hundred Ninety-Eight Thousand Seven Hundred and Sixteen (298,716) transferrable development rights as more particularly described on Exhibit "A-1" (collectively, the "Development Rights") pursuant to MS's January 26, 2012 UCC Sale to itself of the physical securities certificates representing those membership interests, the validity of which the Choo Parties also contest in the State Court Action and the Bankruptcy Cases.

C.   The Debtor Entities are subject to certain proceedings in the United States Bankruptcy Court for the Northern District of California (Oakland Division) (the "Bankruptcy Court") (Case Numbers 11-49300, 11-49301, 11-70224, 11-70228, 11-70229, 11-70231, 11-70232, 11-70233, 11-70234), and various appeals and Adversary Proceedings related thereto, including but potentially not limited thereto, BAP Nos. NC-11-1729 and 13-1132, and Adversary Proceeding Nos. 12-04248 and 11-04334 (all collectively, the "Bankruptcy Cases").

D.   Certain or all of the Choo Parties also brought an action in San Francisco Superior Court against MS and others (collectively, the "State Court Defendants") for damages, quiet title, and for other relief, and the State Court Defendants have filed a demurrer to the operative first

09995.112 2406194v1

-1-

Exhibit B

Case: 11-49300   Doc# 298-4   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 2 of 17

amended complaint in such action on grounds including that the claims asserted therein are not legally sufficient (David Choo et al. v. MS Mission Holdings, LLC et al., Superior Court of the State of California County of San Francisco, Case No. CGC-12-522421) (collectively, the "State Court Action").

E. As of the Effective Date, TMG/Northwood is also entering into a purchase agreement with MS pursuant to which TMG/Northwood intends to purchase all of MS's right, title and interest in the Property, as defined below (the "Mission PSA").

F. Each of the Choo Parties and TMG/Northwood desires that TMG/Northwood shall pay certain consideration to the Debtor Entities and that the Choo Parties shall do the following: (i) release and quitclaim to TMG/Northwood all of their right, title and interest in the Property (as defined below); (ii) pay in full (or otherwise settle and obtain signed and final releases from) all creditors, equity holders and parties-in-interest in the Bankruptcy Cases, and from all equity investors in any of the Debtor Entities and Marcus Heights regarding their interests in the Debtor Entities, Marcus Heights and the Property, and or otherwise provide for full and complete satisfaction of all such claims and interests, and a complete release of all such claims and interests as to TMG/Northwood and the Property, as further described in this Agreement; (iii) file and obtain the final dismissal of the State Court Action with prejudice; and (iv) settle in full any and all claims and actions between the Choo Parties, MS and its affiliates, whether or not claimed or asserted in the State Court Action or the Bankruptcy Cases (the "Choo Parties/MS Release"). Concurrently with the consummation of the foregoing, each of the Choo Parties and TMG/Northwood desires that Choo (through a newly formed single-purpose affiliate, the members of which may include other individuals or entities) will also acquire a membership interest in TMG FM LLC, a Delaware limited liability company ("TMG LLC"), which will be one of the two members of the sole member of TMG/Northwood, also upon the terms and conditions stated in this Agreement (including the terms and conditions set forth in the form of operating agreement of TMG LLC attached to this Agreement as Exhibit B and to be entered into concurrently with the consummation of the Transactions (the "TMG LLC Operating Agreement")), and subject to the terms and conditions set forth in the operating agreements of TMG/Northwood and its sole member.

G. In order to effectuate the transactions between the Choo Parties and TMG/Northwood described above, the Choo Parties and TMG/Northwood now desire to enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants of the parties herein contained and other valuable consideration, the parties agree as follows:

1. RELEASE; TITLE COMPANY.

1.1 General. Subject to the terms, covenants and conditions of this Agreement, the Choo Parties shall release and quitclaim to TMG/Northwood, all of the Choo Parties' right, title and interest in the Property.

1.2 The Property. As used in this Agreement, the term "Property" includes all of the Choo Parties' right, title and interest in the Real Property and the Development Rights and all of

the items referred to in Subsections 1.2.1 through 1.2.4 below.

    1.2.1. Personal Property. All of the Choo Parties' right, title and interest in and to any and all tangible personal property that is (a) located at the Real Property, and (b) owned by the Choo Parties (the "Personal Property").

    1.2.2. Rights and Privileges. All of the Choo Parties' right, title and interest, if any, in and to all rights, privileges, tenements, hereditaments, rights-of-way, easements, appurtenances, mineral rights, development rights, air rights and riparian or littoral rights belonging or appertaining to the Real Property.

    1.2.3. Intangible Property. All of the Choo Parties' right, title and interest in and to the following, to the extent assignable (i) all leases, tenancy and occupancy agreements (and guarantees of such leases, if any) affecting the Property (the "Leases"), (ii) all service, maintenance, construction, management and other contracts that TMG/Northwood agrees in writing to assume (collectively, the "Contracts"), (iii) all governmental permits, licenses, entitlements and approvals, applications, traffic studies, plans and specifications, reports, studies, warranties and guarantees that the Choo Parties have received in connection with the development and construction of, or any work or services performed with respect to, or equipment installed in, the Improvements; (iv) that certain agreement with Skidmore, Owings and Merrill and any other personal or intangible property owned by Marcus Heights that is located on the Real Property or intangible property related to the Real Property (excluding any bank accounts, securities, accounts receivables or similar monetary items) ; and (v) any other intangible property related to the Real Property or the Personal Property, (collectively, the "Intangible Property").

    1.2.4. Third Party Claims. All of the Choo Parties' right, title and interest in and any and all assignable claims against any third parties related to any of the foregoing that are not otherwise released by the Choo Parties under this Agreement, or by the Choo Parties under the Choo Parties/MS Release.

1.3. Title Company. The purchase and sale of the Property shall be accomplished through an escrow ("Escrow") that TMG/Northwood has established or will establish with Old Republic Title Insurance Company (the "Title Company" or "Escrow Holder") at 275 Battery St., Suite 1500, San Francisco, CA 94111.

## 2. PAYMENT OF RELEASE AMOUNT; CHOO PARTIES' INVESTMENT IN TMG LLC.

2.1. Amount. The release amount (the "Release Amount") to be paid by TMG/Northwood to the Choo Parties as consideration for the transactions contemplated by this Agreement is a total of Twenty-Five Million Dollars ($25,000,000.00), which shall be payable by TMG/Northwood to the Choo Parties as follows:

    (a)    Twenty Million Dollars ($20,000,000.00) (the "Cash Consideration"), in cash, at Closing (as defined below); and

    (b)    Five Million Dollars ($5,000,000.00) (the "Deferred Consideration"), in

cash, payable through the applicable escrow only on the earlier of: (i) the date TMG/Northwood sells (at any price, whether or not it exceeds the amount of the Deferred Consideration) all or any portion of TMG/Northwood's fee interest in the Real Property to an unrelated third party, which sale shall be deemed to have occurred upon the close of escrow of such third party sale and the recordation of a Grant Deed or other deed from TMG/Northwood to an unrelated third party in the Official Records of the City and County of San Francisco; or (ii) the date of close of escrow of any refinancing or recapitalization of the Property that disburses to TMG/Northwood more than 100% of its entire equity investment in the Property(which shall not include the Equity Investment, defined below) (such earlier date shall be referred to as the "$5M Trigger Date").

2.2. Terms of Payment. TMG/Northwood shall pay the Release Amount to the Choo Parties as follows:

2.2.1 Payment of Cash Consideration. The balance of the Cash Consideration, as adjusted by the credits, if any, specified in this Agreement, shall be paid by TMG/Northwood, in full, by wire transfer of immediately available federal funds through Escrow on the Closing Date (as defined below). The Choo Parties acknowledge that TMG/Northwood has separately deposited Three Million Dollars ($3,000,000.00) (the "Separate Deposit") into a separate escrow with the Title Company, and that if the Closing occurs then such amount shall be released into Escrow and applied to the payment of the Cash Consideration.

2.2.2 Payment of Deferred Consideration. The Deferred Consideration shall be paid by TMG/Northwood, in full, by wire transfer of immediately available federal funds through the applicable escrow on the $5M Trigger Date.

2.3 TMG LLC. On the Closing Date, TMG LLC will be a member of the sole member of TMG/Northwood. TMG LLC shall be formed pursuant to the TMG LLC Operating Agreement. The TMG LLC Operating Agreement provides, among other things, that Choo and the TMG entity (the "TMG Partner") shall contribute equity to TMG LLC and Choo and the TMG Partner will share a portion of the promote distributed by TMG/Northwood to TMG LLC (the "Promote"). On the Closing Date, Choo, himself or through his affiliates, shall invest Five Million Dollars ($5,000,000.00), in cash (the "Equity Investment"), through Escrow, in TMG LLC, and Choo shall receive a corresponding interest in TMG LLC as set forth in the TMG LLC Operating Agreement. In addition, Choo shall receive a share in the Promote on terms set forth in the TMG LLC Operating Agreement. Without intending to modify its terms by this acknowledgement, the parties acknowledge that the TMG LLC Operating Agreement also provides that Choo shall have absolutely no voting or approval rights or claims of any kind (excluding claims for intentional fraud) regarding any decisions, actions or omissions by TMG LLC or TMG/Northwood. The TMG LLC Operating Agreement refers to that certain Master LLC Agreement, as defined in the TMG LLC Operating Agreement. Attached to this Agreement as Exhibit B-1 is a letter of intent that memorializes the material business points of the Master LLC Agreement (the "Master LOI"). Upon execution of the Master LLC Agreement, the parties shall attach it to this Agreement as an exhibit.

3. LIQUIDATED DAMAGES. TMG/NORTHWOOD ACKNOWLEDGES THAT THE CLOSING OF THE SALE OF THE PROPERTY TO TMG/NORTHWOOD, ON THE TERMS AND CONDITIONS AND WITHIN THE TIME PERIOD SET FORTH IN THIS

Case: 11-49300   Doc# 298-4   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 5 of 17

AGREEMENT, IS MATERIAL TO THE CHOO PARTIES. TMG/NORTHWOOD ALSO ACKNOWLEDGES THAT SUBSTANTIAL DAMAGES WILL BE SUFFERED BY THE CHOO PARTIES IF SUCH TRANSACTION IS NOT CONSUMMATED DUE TO TMG/NORTHWOOD'S DEFAULT UNDER THIS AGREEMENT. TMG/NORTHWOOD FURTHER ACKNOWLEDGES THAT, AS OF THE DATE OF THIS AGREEMENT, THE CHOO PARTIES' DAMAGES WOULD BE EXTREMELY DIFFICULT OR IMPOSSIBLE TO COMPUTE IN LIGHT OF THE UNPREDICTABLE STATE OF THE ECONOMY AND OF GOVERNMENTAL REGULATIONS, THE FLUCTUATING MARKET FOR REAL ESTATE AND REAL ESTATE LOANS OF ALL TYPES, AND OTHER FACTORS WHICH DIRECTLY AFFECT THE VALUE AND MARKETABILITY OF THE PROPERTY. IN LIGHT OF THE FOREGOING AND ALL OF THE OTHER FACTS AND CIRCUMSTANCES SURROUNDING THIS TRANSACTION, AND FOLLOWING NEGOTIATIONS BETWEEN THE PARTIES, TMG/NORTHWOOD AND THE CHOO PARTIES AGREE THAT THREE MILLION DOLLARS ($3,000,000.00) REPRESENTS A REASONABLE ESTIMATE OF THE DAMAGES WHICH THE CHOO PARTIES WOULD SUFFER BY REASON OF TMG/NORTHWOOD'S MATERIAL DEFAULT HEREUNDER. ACCORDINGLY, TMG/NORTHWOOD AND THE CHOO PARTIES HEREBY AGREE THAT, IN THE EVENT THE CLOSING OF THE PURCHASE OF THE PROPERTY DOES NOT OCCUR AS CONTEMPLATED BY THIS AGREEMENT SOLELY AS A RESULT OF A MATERIAL DEFAULT BY TMG/NORTHWOOD UNDER THIS AGREEMENT OR THE MISSION PSA, THE CHOO PARTIES MAY TERMINATE THIS AGREEMENT BY GIVING NOTICE TO TMG/NORTHWOOD AND TITLE COMPANY. IN THE EVENT OF SUCH TERMINATION, THE CHOO PARTIES SHALL BE ENTITLED TO THREE MILLION DOLLARS ($3,000,000.00) AS LIQUIDATED DAMAGES IN LIEU OF ANY OTHER CLAIM THE CHOO PARTIES MAY HAVE AT LAW OR IN EQUITY (INCLUDING, WITHOUT LIMITATION, SPECIFIC PERFORMANCE) ARISING BY REASON OF SUCH MATERIAL DEFAULT, AND THE CHOO PARTIES HEREBY WAIVES ITS RIGHT TO MAKE ANY OTHER CLAIMS AGAINST TMG/NORTHWOOD AS A RESULT OF SUCH DEFAULT. THE CHOO PARTIES FURTHER AGREE THAT CHOO'S RECEIPT OF THE SEPARATE DEPOSIT IN THE AMOUNT OF THREE MILLION DOLLARS ($3,000,000.00) SHALL SATISFY TMG/NORTHWOOD'S OBLIGATION TO PAY THE LIQUIDATED DAMAGES AMOUNT TO THE CHOO PARTIES HEREUNDER. THE PARTIES HAVE INITIALED THIS SECTION 3 TO ESTABLISH THEIR INTENT SO TO LIQUIDATE DAMAGES.

Choo Parties' Initials: _____    TMG/Northwood's Initials: _[initialed]_

4. TMG/NORTHWOOD'S CONDITIONS PRECEDENT.

    4.1. Enumeration of Conditions. TMG/Northwood's obligations under this Agreement shall be subject to the satisfaction (or written waiver by TMG/Northwood) of each of the conditions precedent specified below in this Section 4.1.

        4.1.1 The Choo Parties' Performance. The Choo Parties shall have performed in all material respects, each and every agreement to be performed by the Choo Parties pursuant to this Agreement and the Choo Parties/MS Release (and any related settlement agreements),

09995.112 2406194v1

Case: 11-49300   Doc# 298-4   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 6 of 17

including, without limitation, timely delivery and execution by the Choo Parties of all instruments or other items required to be delivered by the Choo Parties pursuant to this Agreement and such settlement agreements and timely performance of all obligations of the Choo Parties with respect to TMG LLC and the Equity Investment.

    4.1.2 <u>The Choo Parties' Representations and Warranties.</u> All of The Choo Parties' representations and warranties made in <u>Article 8</u> shall be true and correct in all material respects as of the Closing Date. The Choo Parties shall provide TMG/Northwood with prompt written notice of any facts or circumstances which become known to The Choo Parties that would render any representation or warranty made in <u>Article 8</u> untrue or incorrect in any material respect.

    4.1.3 <u>Concurrent Closing Under Mission PSA.</u> Concurrently with the Closing hereunder, the closing of TMG/Northwood's acquisition of all of MS' right, title and interest in the Property shall have been consummated pursuant to the terms and conditions of the Mission PSA (it being acknowledged that any termination of the Mission PSA shall result in the failure of this condition).

    4.1.4 <u>Dismissal of Lawsuit.</u> The dismissal of the State Court Action with prejudice, which has become final and no longer subject to appeal (the "Dismissal"), and the full release by the Choo Parties and MS and all the State Court Defendants of all of their respective claims (as contemplated by the Choo Parties/MS Release).

    4.1.5 <u>Settlement and Release.</u> MS and the Choo Parties shall have agreed to a full and mutual settlement and release of all claims by and between themselves under the Choo Parties/MS Release, and to the extent an order affirming the same is necessary such order has become final and no longer subject to appeal (the "Settlement").

    4.1.6 <u>Required Bankruptcy Court Approval.</u> The Bankruptcy Court shall have entered an order, in form and substance reasonably satisfactory to TMG/Northwood and the Choo Parties, which order has not been stayed and which order has become final and no longer subject to appeal (the "Bankruptcy Court Approval"), that approves this Agreement, the Mission PSA and the Choo Parties/MS Release and all transactions memorialized hereby and thereby, and that finds, holds, and orders, among other things, that: (A) except as otherwise approved by TMG/Northwood, all claims by all parties (including all creditors, claimants, parties-in-interest, and all interest holders in the Choo Parties) in the Bankruptcy Cases have been satisfied and are forever released and barred, including that all "insider" claims of or by any or all of the Choo Parties in the Bankruptcy Cases are waived, released, and forever barred, or if Debtor Entities cannot achieve such satisfaction and release after reasonable, timely, and diligent effort by them and Choo prior to Closing, then the Choo Parties shall waive any and all claims and interests they assert in the Bankruptcy Cases against, or in, Debtor Entities, and Debtor Entities shall establish a trust fund (the "Bankruptcy Estate Trust Fund") in the sum of not less than $3,000,000 (minus the amount of any reduction in creditor claims resulting from any releases the Choo Parties may obtain from any creditors of Debtor Entities or resulting from orders of the Bankruptcy Court disallowing their claims prior to establishing the Bankruptcy Estate Trust Fund), or other sum the Bankruptcy Court may require or order with respect to claims scheduled or timely filed plus administrative claims, directly from the proceeds that the Choo Parties are to

receive under the transactions contemplated by this Agreement, which Bankruptcy Estate Trust Fund shall be used to satisfy in full all claims against, and any and all remaining interests of, Debtor Entities, without any further recourse against TMG/Northwood, MS (and both of their respective applicable affiliates), and the Property; (B) except as otherwise approved by TMG/Northwood, specifically that all claims by all parties (including all creditors, claimants, parties-in-interest, and all interest holders in the Choo Parties) in the Bankruptcy Cases are released, satisfied, and forever barred as to TMG/Northwood and MS and their respective applicable affiliates, and to the extent the Bankruptcy Court is willing to so order, have otherwise been released, satisfied and forever barred; (C) except as otherwise approved by TMG/Northwood, all claims by all parties (including all creditors, claimants, parties-in-interest, and all interest holders in the Choo Parties) in the Bankruptcy Cases are released, satisfied, and barred as to the Property, and that TMG/Northwood shall take title to the Property free and clear of all liens, claims, and encumbrances, by or of all such parties; and (D) except as otherwise approved by TMG/Northwood, and if the Bankruptcy Court is willing to so order, that TMG/Northwood shall take title to the Property free and clear of any and all other liens, claims and encumbrances. The Choo Parties shall promptly prepare all motions and papers required or recommended to timely obtain the Bankruptcy Court Approval (jointly with MS as necessary or appropriate), and TMG/Northwood shall have reasonable opportunity to review all such motions and papers, and provide comments on them to the Choo Parties and to MS, prior to filing. The Choo Parties shall use all reasonable, diligent, and best efforts to obtain the Bankruptcy Court Approval, and to file and prosecute all motions and papers related thereto.

4.2. <u>Right to Terminate.</u> TMG/Northwood shall have the right to terminate this Agreement on account of a failure of any of the conditions precedent set forth in <u>Section 4.1</u> in accordance with the terms and conditions of this <u>Section 4.2</u>. The Choo Parties shall cooperate with TMG/Northwood and TMG/Northwood's efforts to fulfill the conditions precedent set forth in <u>Section 4.1</u> above. With respect to each condition precedent set forth above, TMG/Northwood shall give written notice to the Choo Parties, on or before the date for its satisfaction, stating whether such condition is satisfied or unsatisfied, as determined by TMG/Northwood, in its sole discretion, or is waived by TMG/Northwood in writing. The Closing shall constitute approval by TMG/Northwood of all matters to which TMG/Northwood has a right of approval and a waiver of all conditions precedent. If TMG/Northwood notifies the Choo Parties in writing, on or before the date for satisfaction of such condition, that any condition is unsatisfied, or if any condition is deemed unsatisfied, then the Choo Parties shall have three (3) business days to cure the unsatisfied condition; provided, however, that if the Choo Parties cannot cure the unsatisfied condition in a timely manner then this Agreement shall terminate. If this Agreement is so terminated, then neither the Choo Parties nor TMG/Northwood shall have any further obligations under this Agreement (except Choo's obligations under the provisions of <u>Section 10.2</u> below or Choo's obligations for a breach of this Agreement).

## 5. <u>THE CHOO PARTIES' CONDITIONS PRECEDENT.</u>

5.1. <u>Enumeration of Conditions.</u> The Choo Parties' obligation to sell the Property to TMG/Northwood shall be subject to the satisfaction (or written waiver by The Choo Parties) of each of the conditions precedent specified below in this <u>Section 5.1.</u>

09995.112 2406194v1

-7-

5.1.1. TMG/Northwood's Performance. As of the Closing Date, TMG/Northwood shall have performed in all material respects its obligations under this Agreement to be performed on or before the Closing Date.

5.1.2. Representations and Warranties. TMG/Northwood's representations and warranties contained in Article 9 of this Agreement shall be true and correct in all material respects as of the Closing Date. TMG/Northwood shall provide The Choo Parties with prompt written notice of any facts or circumstances which become known to TMG/Northwood that would render any representation or warranty made in Article 9 untrue or incorrect in any material respect.

5.1.3 Dismissal of Lawsuit. The Dismissal shall have occurred.

5.1.4 Settlement and Release. The Settlement shall have occurred.

5.1.4 Required Bankruptcy Court Approval. The Bankruptcy Court Approval shall have been received.

5.1.5 Master LLC Agreement. On or before May 13, 2013 TMG/Northwood shall deliver to Choo the final form of Master LLC Agreement (the "Final Master LLC Agreement"). Choo shall have until May 14, 2013 to reasonably approve the Final Master LLC Agreement; provided, however, that Choo shall only have the right to disapprove the Final Master LLC Agreement if (i) the material economic business terms of the Final Master LLC Agreement are materially different than the terms set forth in the Master LOI, or (ii) the Master LLC Agreement creates any potential material personal liabilities for Choo that are more extensive than the liabilities created by the TMG LLC Operating Agreement.

5.2. Right to Terminate. With respect to each condition precedent set forth above, the Choo Parties shall give written notice to TMG/Northwood, on or before the date specified above for such condition, stating whether such condition is satisfied, unsatisfied or is waived by the Choo Parties. The Closing shall constitute approval by the Choo Parties of all matters to which the Choo Parties has a right of approval and a waiver of all conditions precedent. If the Choo Parties notify TMG/Northwood in writing, on or before the date for satisfaction of such condition, that any condition is unsatisfied, or if any condition is deemed unsatisfied, then TMG/Northwood shall have three (3) business days to cure the unsatisfied condition; provided, however, that if TMG/Northwood cannot cure the unsatisfied condition in a timely manner then this Agreement shall terminate. If this Agreement is so terminated, then neither the Choo Parties nor TMG/Northwood shall have any further obligations under this Agreement (except Choo's obligations under the provisions of Section 10.2 below, if they arise and TMG/Northwood's obligations under this Agreement as described in Section 3 above).

6. TITLE.

6.1 Deed. At Closing, the Choo Parties shall execute and deliver to TMG/Northwood the Quitclaim Deed (the "Quitclaim Deed"), in the form attached to this Agreement as Exhibit C and the applicable certificates of transfer (the "Transfer Certificates") in the form attached to this Agreement as Exhibit C-1, or in such other form as is reasonably requested by TMG/Northwood,

09995.112 2406194v1

the San Francisco Planning Department or Escrow Holder to properly and validly convey the Development Rights to TMG/Northwood.

## 7. THE CHOO PARTIES COVENANTS.

7.1 Leases Contracts. The Choo Parties shall not enter into any new Lease or Contract affecting the Property, or terminate or amend any Leases or Contracts affecting any of the Property without TMG/Northwood's prior written consent in each instance.

7.2 Conditions of Title. Between the Effective Date and the Closing Date, the Choo Parties shall not enter into any new agreement or take any other actions that would constitute or result in a lien or claim on the Property or terminate or amend any existing exception to title affecting any of the Real Property without TMG/Northwood's prior written consent in each instance.

7.3 Marketing of Property. Between the Effective Date and the Closing Date, the Choo Parties shall have the right and ability to solicit or accept additional offers and engage in discussions with other potential third parties; provided that Choo shall promptly advise TMG/Northwood of any such other offers, provide TMG/Northwood with copies of any documents (e.g., letters of intent) evidencing any such other offers that are accepted, and otherwise keep TMG/Northwood generally informed with respect to any other offers or discussions with potential third parties.

7.4. Additional Covenants. Subject to the provisions of Section 7.3, at all times after the Effective Date, Choo shall proceed in good faith and using his best efforts to obtain the Dismissal, Settlement and Bankruptcy Court Approval.

## 8. THE CHOO PARTIES' REPRESENTATIONS AND WARRANTIES.

8.1. Representations and Warranties. The Choo Parties hereby make the following representations and warranties as of the date of this Agreement:

8.1.1. Leases. To the best of Choo's knowledge (with respect to leases executed before the Foreclosure Date) and to the actual knowledge of Choo (with respect to Leases executed after the Foreclosure Date): (a) there are no leases of space encumbering the Property which will be in force after the Closing other than the Leases listed on Exhibit D attached hereto, (b) the Choo Parties have no present or future obligation to provide any tenant under any Lease with an allowance to construct, or to construct at its own expense, any tenant improvements with respect to the current term of such Lease, and (c) the Choo Parties have no present or future obligation to pay any lease commissions due with respect to the current term of any Lease and all such lease commissions have been paid in full.

8.1.2. Hazardous Materials. To the best of Choo's knowledge (with respect to the period before the Foreclosure Date) and to the actual knowledge of Choo (with respect to the period after the Foreclosure Date), no governmental authority has requested or required the Choo Parties or any tenant to take any remedial or corrective action under any environmental laws with respect to any hazardous materials on or under the Property. As used in this Agreement,

"environmental laws" means all present and future statutes, ordinances, orders, rules and regulations of all federal, state and local governmental agencies relating to the use, generation, manufacture, installation, release, discharge, storage, transportation or disposal of hazardous materials; and "hazardous materials" means petroleum, asbestos, polychlorinated biphenyls, radioactive materials, radon gas, underground storage tanks or any chemical, material or substance now or hereafter defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials", "extremely hazardous waste", "restricted hazardous waste" or "toxic substances", or words of similar import, under any environmental laws. The provisions of this Section 8.1.2 are not intended to create any additional liability for Choo with respect to hazardous materials except as may arise from a breach of this representation and warranty.

8.1.3. The Choo Parties Documents. The Choo Parties have provided TMG/Northwood with, or made available to TMG/Northwood, true, complete and correct copies of all of documents, reports, plans, applications, or other materials in any way constituting Intangible Property as defined in this Agreement.

8.1.4. No Official Notices. To the best of Choo's knowledge (with respect to the period before the Foreclosure Date) and to the actual knowledge of Choo (with respect to the period after the Foreclosure Date), no governmental agency having jurisdiction over the Property has requested or required that any work or repairs be done at or to the Property, which work or repairs has not been completed.

8.1.5. No Consents. No consent or approval to the Choo Parties' obligations under this Agreement is required to be obtained from any governmental agency or public administrative body, other than the Bankruptcy Court Approval with respect to the obligations of the Choo Parties. No other consent or approval to the Choo Parties' performance of their obligations under this Agreement is required from any third party except as expressly provided in this Agreement.

8.1.6. INTENTIONALLY OMITTED

8.1.7. Contracts. The Choo Parties have not entered into any Contracts regarding the Property that shall be in effect after the Closing or with respect to which TMG/Northwood shall have any obligations other than those listed in Exhibit E. As to JP Capital, LLC and Peninsula Towers, LLC, Choo has no actual knowledge of such Contracts, if any, entered into on or after January 26, 2012.

8.1.8. Violation of Laws. The Choo Parties have not received notice of any uncured violation of any applicable laws with respect to the Property from any governmental authority having jurisdiction over the Property, excluding any notices relating in any way to unpaid or delinquent real estate taxes.

8.1.9. Litigation. To the best of the Choo Parties' knowledge, there are no pending lawsuits and the Choo Parties have not received any written notice of any threatened lawsuits, affecting the Property or the ownership or operation thereof, other than the Lawsuit and the Bankruptcy Cases.

8.1.10 Due Authorization. Choo and Marcus Heights have been duly authorized to execute and perform their obligations under this Agreement. The persons signing this Agreement on behalf of Choo and/or Marcus Heights have the power and authority to do so and to bind Choo and/or Marcus Heights, as applicable, to this Agreement. All the instruments, agreements and other documents executed by the Choo Parties that are to be delivered to TMG/Northwood at the Closing are, and at the time of the Closing will be, duly authorized, executed and delivered by the Choo Parties.

8.1.11 Creditors. Except as set forth on Exhibit I attached to this Agreement, there are no unpaid creditors, interest holders or known claimants of the Debtor Entities, and all claims and obligations described on Exhibit I shall be paid in full as of the Closing, or as otherwise described in Section 4.1.6 above. The Choo Parties represent and warrant that Exhibit I accurately reflects the identity of all unpaid creditors, interest holders and known claimants of Debtor Entities, and the amounts owing to them and/or a description of their equity interests.

8.1.12. Non-Foreign Person. None of the Choo Parties is a "foreign person" as defined in Internal Revenue Code Section 1445(f)(3) and none of the Choo Parties is subject to withholding under Section 26131 of the California Revenue and Taxation Code.

8.2 Indemnification by the Choo Parties. The Choo Parties shall indemnify, defend and hold TMG/Northwood harmless of and from any and all liabilities, claims, demands and expenses (except those items which by this Agreement specifically become the obligation of the TMG/Northwood on and after Closing), incurred on or before the Closing Date, that arise out of any claim by any person or entity alleging rights or interests related to Debtor Entities, whether or not such persons, entities, claims or interests are described on Exhibit I.

8.3 Release. Except as expressly provided in this Agreement, including the reservation of any future claims based on or arising out of the TMG LLC Operating Agreement, TMG/Northwood and each and all of the Choo Parties acknowledge and agree that this Agreement is intended to constitute a full and final settlement, release, and bar to any and all claims of any kind and of any nature, both known or unknown, suspected or unsuspected, that TMG/Northwood, on the one hand, and each and all of the Choo Parties on the other hand, may have against each other, as of the date of this Agreement and as of the Closing. **TMG/Northwood and the Choo Parties agree and acknowledge they are familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, must have materially affected his or her settlement with the debtor.**

**TMG/Northwood and the each and all of the Choo Parties expressly waive and relinquish any and all rights and benefits that any of them may have under Civil Code Section 1542 to the fullest extent permissible.** TMG/Northwood and each and all of the Choo Parties acknowledge and agree they are aware that they or their attorneys or agents may hereafter discover claims or facts in addition to, or different from, those which are now known or believed to exist with respect of the subject matter of this Agreement, but it nevertheless is the intention of

TMG/Northwood and each and all of the Choo Parties to fully, finally, and forever settle, release, and bar any and all claims of any kind, both known or unknown, suspected or unsuspected, that TMG/Northwood, on the one hand, and each and all of the Choo Parties on the other hand, may have against each other as of the date of this Agreement, excluding any future claims based on or arising out of the TMG LLC Operating Agreement.

## 9. TMG/NORTHWOOD'S REPRESENTATIONS AND WARRANTIES.

9.1. General. TMG/Northwood hereby makes the following representations and warranties as of the date of this Agreement:

9.1.1 Organization. TMG/Northwood is duly organized and validly existing and in good standing under the laws of the State of Delaware.

9.1.2. Authorization. All the instruments, agreements and other documents executed by TMG/Northwood which are to be delivered to the Choo Parties at the Closing are, and at the time of Closing will be, duly authorized, executed and delivered by TMG/Northwood.

9.1.3. Execution of PSA. As of the Effective Date, TMG/Northwood and MS shall have executed the Mission PSA

## 10. CLOSING.

10.1. Closing. The transaction(s) contemplated by this Agreement shall be consummated through Escrow on the date (the "Closing Date") that is no more than ten (10) days after the Bankruptcy Court Approval becomes final and nonappealable; provided, however, that if the Closing Date has not occurred on or before August 30, 2013, then this Agreement shall automatically terminate. For purposes of this Agreement, the term "Closing" shall mean the consummation of the sale and conveyance of the Property to TMG/Northwood as evidenced by recordation of the Quitclaim Deed and the Transfer Certificates and consummation of the other transactions described herein that are scheduled to occur concurrently with the sale and conveyance of the Property.

10.2 Break-Up Fee. Notwithstanding any provision of this Agreement to the contrary, and notwithstanding any actual or purported termination of this Agreement, if the Closing does not occur on or before the Closing Date, then Choo shall pay to TMG/Northwood a break-up fee (a "Break-Up Fee") as described below, in cash or immediately available funds, which Break-Up Fee shall become due and payable by Choo to TMG/Northwood if for any reason whatsoever the Property is sold to any person or entity other than TMG/Northwood (other than as a result of a material default under this Agreement or the Mission PSA by TMG/Northwood or as a result of a termination of this Agreement or the Mission PSA for reasons unrelated to a third party sale), subject to the following provisions with respect to the following situations: (a) if the Property is sold to a third party as a result of any Bankruptcy Code section 363 sale process in which the Bankruptcy Court is involved in connection with the Bankruptcy Cases (a "363 Sale"), then Choo, individually, shall pay a Break-Up Fee to TMG/Northwood in an amount equal to the positive difference (if any, but not in excess of Six Million Five Hundred Thousand Dollars ($6,500,000.00)) of (i) the total consideration that Choo, the Debtor Entities and any of their

respective affiliates directly or indirectly receive in the aggregate (inclusive of co-investment rights and any future payments or fees, whether or not contingent or subordinate, but without double counting) in connection with such third-party sale (the "Total Choo Consideration"), minus (ii) Twenty Five Million Dollars ($25,000,000.00); or (b) if the Property is sold to a third party (a "TP Sale") for any other reason (e.g., Choo enters into an agreement with a third party, whether or not following a default by the Choo Parties under this Agreement), then Choo, individually, shall pay a Break-Up Fee to TMG/Northwood in an amount equal to the lesser of (i) the Total Choo Consideration, and (ii) Six Million Five Hundred Thousand Dollars ($6,5000,000). In the event that the Bankruptcy Court requires or approves the payment of a break-up or similar fee by the Debtor Entities (or their bankruptcy estates) to TMG/Northwood in connection with a sale of the Property to a third party (and/or if TMG/Northwood otherwise applies for a break-up fee or similar fee), then the actual payment of such amount to TMG/Northwood shall be credited towards Choo's obligation to pay a Break-Up Fee hereunder; provided, however, that nothing herein shall limit the amount of any such fee that the Bankruptcy Court requires or approves to be paid to TMG/Northwood or waive any rights of TMG/Northwood to collect the entirety of any such fee; provided further, however, that in no event shall TMG/Northwood be entitled to a break-up fee in excess of Six Million Five Hundred Thousand Dollars ($6,5000,000).

10.3. <u>The Choo Parties' Delivery Into Escrow</u>. The Choo Parties shall deliver the following items into Escrow:

10.3.1. <u>Deed and Transfer Certificates</u>. The Quitclaim Deed and Transfer Certificates, duly executed and acknowledged by the Choo Parties, except that the amount of any transfer tax shall not be shown on the Quitclaim Deed, but shall be set forth on a separate affidavit or instrument which, after recordation of the Quitclaim Deed, shall be attached thereto so that the amount of such transfer tax shall not be of record.

10.3.2. <u>Bill of Sale and Assignment</u>. A bill of sale and assignment, duly executed by the Choo Parties, in the form attached to this Agreement as <u>Exhibit G</u>.

10.3.3 <u>LLC Operating Agreement</u>. The signature page of the TMG LLC Operating Agreement, duly executed by Choo.

10.3.4 <u>Equity Investment.</u> Immediately available funds in the amount of the Equity Investment.

10.3.5 <u>FIRPTA Certificate; California Form 593-C</u>. An original certificate of non-foreign status for each of the Choo Parties in the form of <u>Exhibit F</u> attached hereto ("FIRPTA Certificate") and an executed original California withholding exemption certificate (Form 593-C), duly executed by each of the Choo Parties.

10.3.6. <u>Evidence of Authorization</u>. Such evidence as shall reasonably establish that execution of this Agreement by each of the Choo Parties and performance of each of their obligations hereunder have been duly authorized and that the person or persons executing this Agreement on behalf of each of the Choo Parties has been duly authorized and empowered to do so.

09995.112 2406194v1

-13-

Case: 11-49300    Doc# 298-4    Filed: 05/16/13    Entered: 05/16/13 18:41:19    Page 14 of 17

10.3.7 Other Documents. Such other documents or instruments as may be reasonably required to consummate this transaction in accordance with the terms and conditions herein contained (including, without limitation, the Title Company's required form of non-imputation indemnity in support of a non-imputation endorsement to TMG/Northwood's title policy with respect to the prior actions and knowledge of the Choo Parties.

10.4. TMG/Northwood's Delivery Into Escrow. TMG/Northwood shall deliver the following items into Escrow:

10.4.1. Cash. Immediately available funds in the following amounts: (i) the balance of the Cash Consideration portion of the Release Amount; (ii) such amount, if any, as is necessary for TMG/Northwood to pay closing costs specified herein; and (iii) any other amounts required from TMG/Northwood in order to close Escrow in accordance with the terms of this Agreement.

10.4.2. Evidence of Authorization. Such evidence as shall reasonably establish that TMG/Northwood's execution of this Agreement and performance of its obligations hereunder have been duly authorized and that the person or persons executing this Agreement on behalf of TMG/Northwood have been duly authorized and empowered to do so.

10.4.3. Other Documents. Such other documents and instruments as may be reasonably required in order to consummate this transaction in accordance with the terms and conditions of this Agreement, such as appropriate escrow instructions to Title Company.

10.5 The Choo Parties' and TMG/Northwood's Joint Delivery Into Escrow. The Choo Parties and TMG/Northwood jointly shall deliver such other documents and instruments as may be reasonably required to consummate this transaction in accordance with the terms and conditions of this Agreement.

10.6. Possession. Subject to the rights of tenants under the Leases, each of the Choo Parties shall surrender all of its rights to possession of the Property, if any, to TMG/Northwood at Closing.

10.7. Closing Procedure. Title Company shall close Escrow when it is in a position to: (i) pay to the Choo Parties, in immediately available funds, the amount of the Cash Consideration portion of the Release Amount, and (ii) pay to TMG LLC, in immediately available funds, the amount of the Equity Investment.

10.8 Closing Costs. Subject to the following sentence, closing costs shall be paid as set forth in the Mission PSA. The Choo Parties shall pay all City and County documentary or other transfer taxes related to the recordation of the Quitclaim Deed, or computed on all or any portion of the Release Amount (but in no event shall the Choo Parties be obligated to pay any such transfer taxes in excess of $625,000.00). TMG/Northwood shall cause the deed under the Mission PSA to be recorded before the Quitclaim Deed.

10.9. Escrow. Upon mutual execution of this Agreement, TMG/Northwood and the

09995.112 2406194v1
-14-

Case: 11-49300   Doc# 298-4   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 15 of 17

Choo Parties shall deposit an executed counterpart of this Agreement with the Title Company and this Agreement shall serve as instructions to the Title Company for consummation of the purchase and sale contemplated hereby. The Choo Parties and TMG/Northwood shall execute such supplemental escrow instructions as may be appropriate to enable Title Company to comply with the terms of this Agreement, provided such supplemental escrow instructions are not in conflict with this Agreement. In the event of any conflict between the provisions of this Agreement and any supplementary escrow instructions signed by TMG/Northwood and The Choo Parties, the terms of this Agreement shall control.

10.10. Compliance. Title Company shall comply with all applicable federal, state and local reporting and withholding requirements relating to the close of the transactions contemplated herein. Without limiting the generality of the foregoing, to the extent the transactions contemplated by this Agreement involve a real estate transaction within the purview of Section 6045 of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), Title Company shall have sole responsibility to comply with the requirements of Section 6045 of the Internal Revenue Code (and any similar requirements imposed by state or local law). Title Company shall hold TMG/Northwood, the Choo Parties and their counsel free and harmless from and against any and all liability, claims, demands, damages and costs, including reasonable attorney's fees and other litigation expenses, arising or resulting from the failure or refusal of Title Company to comply with such reporting requirements.

11. BROKERS.

11.1 Representations. The Choo Parties and TMG/Northwood each warrant and represent to the other that no person, firm or entity is in a position to claim a real estate brokerage commission or finder's or other similar fee as a result of a sale of the Property by the Choo Parties to TMG/Northwood pursuant to this Agreement based upon contacts with such party or the Property, and each party shall indemnify, defend, protect and hold the other party harmless from and against any and all claims, actions, causes of action, demands, liabilities, damages, costs and expenses (including attorneys' fees) arising as a result of a breach of the foregoing representation and warranty. TMG/Northwood hereby discloses to the Choo Parties that TMG Partners is a licensed California real estate broker.

11.2 Related Sale. TMG/Northwood and the Choo Parties hereby agree that if, following TMG/Northwood's acquisition of the Property from the Choo Parties pursuant to this Agreement, TMG/Northwood sells all or any portion of the Property to The Related Companies ("Related") on or before a date two (2) years after the Effective Date (with any such sale to Related being consummated on or before such date being referred to herein as the "Related Sale"), then TMG/Northwood shall pay a commission (the "Commission") to RM Capital Management LLC or its designee ("Broker") subject to the following terms and conditions:

(a) The Commission shall be an amount equal to one percent (1.0%) of the Related Sale Amount (as defined below) of the Property, or portion thereof, sold by TMG/Northwood in the Related Sale. "Related Sale Amount" means (a) the market value of all consideration paid for the Property, or portion thereof, by Related, minus (b) any defeasance cost, prorations, reimbursement of costs, credits to TMG/Northwood, or holdbacks.

Case: 11-49300   Doc# 298-4   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 16 of 17

(b) The Commission shall be deemed earned only upon the close of escrow of the Related Sale and transfer of title to Related of TMG/Northwood's entire ownership interest in the Property, or portion thereof, The Commission shall be payable in full by wire transfer from escrow simultaneously with the close of the Related Sale. TMG/Northwood shall be released from any and all claims for the Commission (or any compensation of any kind) under this Agreement or otherwise if TMG/Northwood does not sell the Property or portion thereof to Related on or before December 31, 2016.

(c) Broker shall not be a third party beneficiary of this Agreement or otherwise have any rights hereunder.

12. MISCELLANEOUS.

12.1. Notices. All notices, demands or other communications of any type given by either party to the other or to Title Company, whether required by this Agreement or in any way related to this transaction, shall be in writing and delivered: (i) by hand for same-day delivery or Federal Express or similar courier service for next-business day delivery; (ii) by facsimile transmission (provided that if facsimile transmission is used, then the same notice, demand or communication shall also be sent out on or before the next business day by hand for same-day delivery or Federal Express or similar overnight courier service for next business-day delivery); or (iii) by United States Mail, as a certified item, return receipt requested, and deposited in a Post Office or other depository under the care or custody of the United States Postal Service, with proper postage affixed. Each notice to a party shall be addressed as follows:

| | |
|---|---|
| To the Choo Parties: | David Choo<br>660 Fourth Street, No. 155<br>San Francisco, California 94107 |
| and a copy to: | Don A. Lesser<br>THE LESSER LAW GROUP<br>1010 B Street, Suite 300<br>San Rafael, California 94901 |
| To TMG/Northwood: | Northwood Acquisitions LLC<br>11355 W. Olympic Boulevard<br>Los Angeles, California 90064<br>Attention: Brady Thurman |
| To TMG/Northwood: | TMG Partners<br>100 Bush Street, 26th floor<br>San Francisco, CA 94104<br>Attn: Matt Field |
| And a copy to: | TMG Partners<br>100 Bush Street, 26th floor |