San Francisco, CA 94104
Attn: Scott Verges, Esq.

To Escrow
Agent:       Old Republic Title Company
             275 Battery Street
             Suite 1500
             San Francisco, CA  94111
             Attn.: Escrow Number 0227012947-DP

Any notice delivered by hand or Federal Express or similar courier service shall be deemed to be delivered when actual delivery is made. Any notice delivered by facsimile transmission shall be deemed to be delivered upon the date and at the time set forth in any confirmation of transmission generated by the sender's machine (provided that if facsimile transmission was used, then the same notice, demand or communication was also sent out on or before the next business by hand for same-day delivery or Federal Express or similar overnight courier service for next business-day delivery). Any notice deposited in the United States Mail in the manner required above shall be deemed to be delivered three (3) calendar days after the date of such deposit, and any time periods provided for herein during which a party may act shall not commence until such notice is deemed to be so delivered. Either party hereto may change its address by notice given as provided herein to the other party and Title Company.

    12.2. <u>Survival of Provisions</u>. Each representation, warranty, covenant, obligation or liability contained in this Agreement shall survive and be binding and enforceable following the Closing and shall not be deemed to be merged into, or waived by delivery or recordation of, the Deed or any other instruments delivered at the Closing.

    12.3. <u>Rules of Construction</u>. Where required for proper interpretation, words in the singular shall include the plural; the masculine gender shall include the neuter and the feminine, and vice versa. The headings of the Articles, Sections, Subsections and paragraphs contained in this Agreement are included only for convenience of reference and shall be disregarded in the construction and interpretation of this Agreement. References in this Agreement to Articles, Sections, Subsections and paragraphs are references to the Articles, Sections, Subsections and paragraphs contained in this Agreement. Each reference in this Agreement to an Article shall be deemed a reference to all Sections and Subsections contained within such Article; each reference to a Section shall be deemed a reference to all Subsections contained within such Section. This Agreement has been fully negotiated at arms' length between the parties, after advice by counsel and other representatives chosen by the parties, and the parties are fully informed with respect thereto. No party shall be deemed the scrivener of this Agreement and, accordingly, the provisions of this Agreement shall be construed as a whole according to their common meaning and not strictly for or against any party. Use in this Agreement of the words "including" or "such as", or words of similar import, following any general term, statement or matter shall not be construed to limit such term, statement or matter to the enumerated items, whether or not language of non-limitation (such as "without limitation" or "but not limited to") are used with reference thereto, but rather shall refer to all items or matters that could reasonably fall within the broadest scope of such term, statement or matter.

09995.112 2406194v1

-17-

Case: 11-49300   Doc# 298-5   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 1 of 20

12.4. <u>Amendment; Waivers</u>. This Agreement may not be modified or amended except by an agreement in writing signed by the parties hereto. A party may waive any of the conditions contained herein or any of the obligations of the other party hereunder, but any such waiver shall be effective only if in writing and signed by the party waiving such conditions or obligations.

12.5. <u>Time of Essence</u>. Time is of the essence of this Agreement and each provision hereof.

12.6. <u>Attorneys' Fees</u>. If any party brings an action or proceeding at law or in equity in any forum to interpret or enforce this Agreement or any provisions contained herein, or to seek damages or other redress for a breach, the prevailing party shall be entitled to recover, in addition to all other remedies or damages, reasonable attorneys' fees incurred in such action or proceeding.

12.7. <u>Governing Law</u>. This Agreement shall be construed and interpreted in accordance with the laws of the State of California.

12.8. <u>Entire Agreement</u>. This Agreement, including the exhibits hereto, constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith. No representation, warranty, covenant, agreement or condition not expressed in this Agreement shall be binding upon the parties hereto or shall affect or be effective to interpret, change or restrict the provisions of this Agreement.

12.9. <u>Exhibits</u>. Each exhibit to which reference is made in this Agreement is deemed incorporated into this Agreement in its entirety by such reference. The exhibits to this Agreement are the following:

| Exhibit A | Legal Description of Property |
| Exhibit A-1 | Development Rights |
| Exhibit B | TMG LLC Operating Agreement |
| Exhibit B-1 | Master LOI |
| Exhibit C | Form of Quitclaim Deed |
| Exhibit C-1 | Development Rights Certificate |
| Exhibit D | List of Leases |
| Exhibit E | List of Contracts |
| Exhibit F | FIRPTA Affidavit |
| Exhibit G | Bill of Sale and Assignment |
| Exhibit H | Intentionally Omitted |
| Exhibit I | Creditors and Claimants |

12.11. <u>Joint and Several Obligations</u>. The obligations of the Choo Parties under this Agreement shall be the joint and several obligations of each of them. If more than one person or entity is included within the party designated hereinabove as TMG/Northwood, then each of the obligations imposed upon such party under this Agreement shall be the joint and several obligations of each of such persons or entities.

Case: 11-49300   Doc# 298-5   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 2 of 20

12.12. <u>Business Day</u>. For purposes of this Agreement, the term "business day" shall mean Monday through Friday, inclusive, but excluding any day which is recognized as a legal holiday by the State of California or the United States. If this Agreement specifies a day or date by which a certain action is to be taken or notice to be given (e.g., the Effective Date, or a specific calendar day), then the action to be taken or notice to be given must be completed by 5:00 p.m. (Pacific time) on such date; provided, however, whenever action must be taken (including the giving of notice or the delivery of documents) under this Agreement during a certain period of time (or by a particular date) that ends (or occurs) on a non-business day, then such period (or date) shall be extended until the immediately following business day.

12.13. <u>Certain Waivers</u>. Each of the Choo Parties hereby unconditionally waives any guarantor or suretyship defense that may otherwise apply with respect to this Agreement in the absence of this waiver.

12.14. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts shall constitute one agreement and each counterpart shall be deemed an original. The parties hereby acknowledge and agree that facsimile signatures or signatures transmitted by electronic mail in so-called "pdf" format shall be legal and binding and shall have the same full force and effect as if an original of this Agreement had been delivered. The Choo Parties and TMG/Northwood (i) intend to be bound by the signatures on any document sent by facsimile or electronic mail, (ii) are aware that the other party will rely on such signatures, and (iii) hereby waive any defenses to the enforcement of the terms of this Agreement based on the foregoing forms of signatures.

12.15 <u>Successors and Assigns</u>. This Agreement, and the terms, covenants and conditions contained in this Agreement, shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs and assigns. Neither TMG/Northwood nor the Choo Parties shall have the right to assign their rights or obligations under this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates set forth below.

**DAVID CHOO**

_____


**SIXTY-TWO FIRST STREET, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


09995.112 2406194v1

-19-

Case: 11-49300   Doc# 298-5   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 3 of 20

**78 FIRST STREET, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


**88 FIRST STREET, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


**518 MISSION STREET, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


**FIRST/JESSIE, LLC,**

a Nevada limited liability company.


By: _____
Its: Manager
Printed Name: David Choo


**FIRST STREET HOLDINGS, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo

09995.112 2406194v1

-20-

Case: 11-49300   Doc# 298-5   Filed: 05/16/13   Entered: 05/16/13 18:41:19   Page 4 of 20

**LYDIAN SF HOLDINGS, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


**JP CAPITAL, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


**PENINSULA TOWERS, LLC,**

a Nevada limited liability company

By: _____
Its: Manager
Printed Name: David Choo


**MARCUS HEIGHTS, LLC,**

a California limited liability company

By: _____
Its: Manager
Printed Name: David Choo

**TMG/NORTHWOOD:**

FM OWNER LLC
a Delaware limited liability company

By: /s/ Brady Thurman
Its: Managing Director
Printed Name: Brady Thurman

## ESCROW HOLDER'S ACCEPTANCE AND AGREEMENT

The undersigned, on behalf of Old Republic Title Company, as Escrow Holder, confirms its agreement to establish and maintain the Escrow in accordance with the requirements set forth herein and to otherwise comply with the terms and conditions herein set forth which are applicable to Escrow Holder.

**OLD REPUBLIC TITLE COMPANY**

By: _____
Its: _____
Date: _____

# EXHIBIT A

# LEGAL DESCRIPTION OF THE REAL PROPERTY

# 512 MISSION STREET, 516 MISSION STREET AND 526 MISSION STREET

The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:

PARCEL I:

Beginning at a point on the northwesterly line of Mission Street, distant 84 feet southwesterly from the southwesterly line of 1st Street; thence southwesterly along said line of Mission Street 24 feet; thence at a right angle northwesterly 58 feet; thence at a right angle northeasterly 24 feet; thence at a right angle southeasterly 58 feet to the point of beginning.

BEING a part of 100 Vara Lot No. 1.

Assessor's Lot 010; Block 3708

PARCEL II:

Beginning at a point on the northwesterly line of Mission Street, distant thereon 108 feet southwesterly from the southwesterly line of 1st Street; running thence southwesterly and along said line of Mission Street 48 feet; thence at a right angle northwesterly 99 feet 6 inches; thence at a right angle northeasterly 48 feet; thence at a right angle southeasterly 99 feet 6 inches to the point of beginning.

BEING part of 100 Vara Block No. 346.

Assessor's Lot 011; Block 3708

PARCEL III:

Beginning at a point on the northwesterly line of Mission Street, distant thereon 156 feet southwesterly from the southwesterly line of 1st Street; running thence southwesterly along said line of Mission Street 94 feet to the northeasterly line of Ecker Street; thence at a right angle northwesterly along said line of Ecker Street 99 feet and 6 inches to the southeasterly line of Elim Alley (formerly Lick Alley); thence at a right angle northeasterly along said line of Elim Alley 94 feet; thence at a right angle southeasterly 99 feet and 6 inches to the point of beginning.

Being a part of 100 Vara Block No. 346.

Assessor's Lot 012; Block 3708

Excepting from Parcels I, II and III all minerals and all mineral rights of every kind and character now known to exist or hereafter discovered as excepted and reserved by Upland Industries Corporation ("Upland") in the Deed recorded December 15th, 1989 in Reel F 21 of Official Records, Image 1007 under Recorder's Serial Number E474970, including, without limiting the generality of the foregoing, oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of, said minerals by and any means or methods suitable to Upland, its successors and or assigns but without entering upon or using the surface thereof, and in such manner as not to damage the surface of said lands or to interfere with the use thereof by grantee, its successors or assigns.

## 50 FIRST STREET

The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:

PARCEL I:

Beginning at a point on the southwesterly line of 1st Street, distant thereon 40 feet southeasterly from the southeasterly line of Stevenson Street; running thence southeasterly along said line of 1st Street 40 feet; thence at a right angle southwesterly 167 feet, 6 inches; thence at a right angle northwesterly 80 feet to the southeasterly line of Stevenson Street; thence at a right angle northeasterly along said line of Stevenson Street 87 feet, 6 inches; thence at a right angle southeasterly 40 feet; thence at a right angle northeasterly 80 feet to the point of beginning.

Being a portion of 100 Vara Block No. 346.

PARCEL II:

Beginning at the point of intersection of the southwesterly line of 1st Street and the northwesterly line of Jessie Street; running thence northwesterly along the southwesterly line of 1st Street 60 feet; thence at a right angle southwesterly 130 feet; thence at a right angle southeasterly 60 feet to the northwesterly line of Jessie Street; thence at a right angle northeasterly along said line of Jessie Street 130 feet to the point of beginning.

Being a portion of 100 Vara Block No. 346.

Assessor's Lot 055; Block 3708

## 62 FIRST STREET

The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:

Beginning at the point of intersection of the Southeasterly line of Jessie Street and the Southwesterly line of 1st Street; running thence Southwesterly along said line of Jessie Street 155 feet; thence at a right angle Southeasterly 50 feet; thence at a right angle Southwesterly 1 foot and 6 inches; thence at a right angle Southeasterly 26 feet, more or less, to the Northwesterly line of Elim (formerly Lick) Alley; thence at a right angle Northeasterly along said line of Elim Alley 156 feet and 6 inches to the Northwesterly line of 1st Street; thence at a right angle Northwesterly along said line of 1st Street 76 feet, more or less, to the point of beginning.

Being a portion of 100 Vara Block No. 346.

APN: Lot 006; Block 3708.

## 78 FIRST STREET

The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:

Commencing at a point on the Southwesterly line of 1st Street, distant thereon 80 feet Northwesterly from the Northwesterly line of Mission Street; running thence Northwesterly and along said line of 1st Street 25 feet to the Southeasterly line of Elim Alley; thence Southwesterly and along said line of Elim Alley 108 feet; thence at a right angle Southeasterly 25 feet; thence at a right angle Northeasterly 108 feet to the point of commencement.

Being a part of 100 Vara Block No. 346.

09995.112 2406194v1

APN: Lot 007; Block 3708

## 88 FIRST STREET

The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:

Beginning at the point of intersection of the northwesterly line of Mission Street with the southwesterly line of 1st Street; running thence northwesterly along said southwesterly line of 1st Street 55 feet; thence at a right angle southwesterly 60 feet; thence at a right angle southeasterly 55 feet to the northwesterly line of Mission Street; thence at a right angle northeasterly along said northwesterly line of Mission Street 60 feet to the point of beginning.

Being a portion of 100 Vara Block No. 346.

Assessor's Lot 009; Block 3708

# EXHIBIT A-1

# DEVELOPMENT RIGHTS

**Block 3707, Lot 021**

The TDR to be acquired includes those certain sixty thousand two hundred sixty-four (60,264) units of TDR ("3707/021 Acquisition TDR") numbered by the Zoning Administrator of the City and County of San Francisco, California (the "Zoning Administrator") as Numbers 3707/021:000001 through 3707/021:60264, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("3707/021 Statement of Eligibility") recorded on August 29, 2001, in the Official Records of the City and County of San Francisco, California (the "Official Records") as Instrument No. 2001-H006008. The 3707/021 Acquisition TDR relates to that certain real property located in the City and County of San Francisco, California (the "City") commonly known as 666 Mission Street and more particularly described in the 3707/021 Statement of Eligibility. The 3707/021 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on October 26, 2001 in the Official Records as Instrument No. 2001-H046615. The 3707/021 Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on July 6, 2005 in the Official Records as Instrument No. 2005-H984427. The 3707/021 Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411319.

**Block 3722, Lot 002**

The TDR to be acquired includes those certain nineteen thousand five hundred sixty-eight (19,568) units of TDR ("3722/002 Acquisition TDR") numbered by the Zoning Administrator as Numbers 3722/002:000001 through 3722/002:19568, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("3722/002 Statement of Eligibility") recorded on March 28, 2001, in the Official Records as Instrument No. 2001-G923158. The 3722/002 Acquisition TDR relates to that certain real property located in the City commonly known as 120 Second Street and more particularly described in the 3722/002 Statement of Eligibility. The 3722/002 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on July 17, 2001 in the Official Records as Instrument No. 2001-G980820. The 3722/002 Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on July 6, 2005 in the Official Records as Instrument No. 2005-H984429. The 3722/002 Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411322.

**Block 3721, Lot 049**

The TDR to be acquired includes those certain twenty-five thousand one hundred twenty-eight (25,128) units of TDR ("3721/049 Acquisition TDR") numbered by the Zoning Administrator as

Numbers 3721/049:000001 through 3721/049:25,128, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("3721/049 Statement of Eligibility") recorded on July 27, 2001, in the Official Records as Instrument No. 2001-G988195. The 3721/049 Acquisition TDR relates to that certain real property located in the City commonly known as 149 Second Street and more particularly described in the 3721/049 Statement of Eligibility. The 3721/049 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on January 31, 2002 in the Official Records as Instrument No. 2002-H100763. The 3721/049 Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on July 6, 2005 in the Official Records as Instrument No. 2005-H984430. The 3721/049 Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411321.

**Block 0228, Lot 011**

The TDR to be acquired includes those certain twenty-four thousand thirty-seven (24,037) units of TDR ("0228/011 Acquisition TDR") numbered by the Zoning Administrator as Numbers 0228/011:000001 through 0228/011:24037, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("0228/011 Statement of Eligibility") recorded on September 30, 1998 in the Official Records as Instrument No. 98-G443741. A second Statement of Eligibility of TDR for the 0228/011 Acquisition TDR was recorded on February 28, 2006 in the Official Records Instrument No. 2006-I135848. The 0228/011 Acquisition TDR relates to that certain real property located in the City commonly known as 565 Commercial Street and more particularly described in the 0228/011 Statement of Eligibility. The 0228/011 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on November 10, 1998 in the Official Records as Instrument No. 98-G465256. The 0228/011 Acquisition TDR were transferred a second time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411329.

**Block 0236, Lot 008**

The TDR to be acquired includes those certain thirty-six thousand two hundred fifty-one (36,251) units of TDR ("0236/008 Acquisition TDR") numbered by the Zoning Administrator as Numbers 0236/008:000001 through 0236/008:36251, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("0236/008 Statement of Eligibility") recorded on October 16, 1998 in the Official Records as Instrument No. 98-G450831. A second Statement of Eligibility of TDR for the Acquisition TDR was recorded on February 28, 2006 in the Official Records as Instrument No. 2006-I135847. The 0236/008 Acquisition TDR relates to that certain real property located in the City commonly known as 236 Front Street and more particularly described in the 0236/008 Statement of Eligibility. The 0236/008 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on December 24, 1998 in the Official Records as Instrument No. 98-G491798. The 0236/008 Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on May 12, 2006 in the Official Records as Instrument No. 2006-I175298. The 0236/008

Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411325.

**Block 0237, Lot 046**

The TDR to be acquired includes those certain thirty thousand five hundred twenty-six (30,526) units of TDR ("0237/046 Acquisition TDR") numbered by the Zoning Administrator as Numbers 0237/046:000001 through 0237/046:30526, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("0237/046 Statement of Eligibility") recorded on October 16, 1998 in the Official Records as Instrument No. 98-G450832. A second Statement of Eligibility of TDR for the Acquisition TDR was recorded on February 28, 2006 in the Official Records as Instrument No. 2006-I135846. The 0237/046 Acquisition TDR relates to that certain real property located in the City commonly known as 237 Front Street and more particularly described in the 0237/046 Statement of Eligibility. The 0237/046 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on December 14, 1998 in the Official Records as Instrument No. 98-G481235. The 0237/046 Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on May 12, 2006 in the Official Records as Instrument No. 2006-I175299. The 0237/046 Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411324.

**Block 0291, Lot 005B**

The TDR to be acquired includes those certain fifteen thousand three hundred forty-nine (15,349) units of TDR ("0291/005B Acquisition TDR") numbered by the Zoning Administrator as Numbers 0291/005B:000001 through 0291/005B:15349, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("0291/005B Statement of Eligibility") recorded on November 30, 1998 in the Official Records as Instrument No. 98-G473282. A second Statement of Eligibility of TDR for the 0291/005B Acquisition TDR was recorded on February 28, 2006 in the Official Records as Instrument No. 2006-I135845. The 0291/005B Acquisition TDR relates to that certain real property located in the City commonly known as 576-580 Market Street and more particularly described in the 0291/005B Statement of Eligibility. The 0291/005B Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on January 13, 1999 in the Official Records as Instrument No. 99-G498003. The 0291/005B Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on May 12, 2006 in the Official Records as Instrument No. 2006-I175300. The 0291/005B Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411327.

**Block 3707, Lot 005**

The TDR to be acquired includes those sixteen thousand seven hundred fifty-six (16,756) units of TDR ("3707/005 Acquisition TDR") numbered by the Zoning Administrator as Numbers 3707/005:000001 through 3707/005:16756, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("3707/005 Statement of Eligibility") recorded on November 19, 2001 in the

Official Records as Instrument No. 2001-H057336. The 3707/005 Acquisition TDR relates to that certain real property located in the City commonly known as 42 Second Street and more particularly described in the 3707/005 Statement of Eligibility. The 3707/005 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on January 30, 2002 in the Official Records as Instrument No. 2002-H099482. The 3707/005 Acquisition TDR were transferred subsequently pursuant to that certain Certificate of Transfer of TDR recorded on July 6, 2005 in the Official Records as Instrument No. 2005-H984428. The 3707/005 Acquisition TDR were transferred a third time pursuant to that certain Certificate of Transfer of TDR recorded on May 14, 2012 in the Official Records as Instrument No. 2012-J411323.

**Block 3715, Lot 001**

The TDR to be acquired includes thirty-one thousand three hundred ninety-six (31,396) units of the 3715/001 Total TDR (as hereinafter defined) (the "3715/001 Acquisition TDR"). The "3715/001 Total TDR" consists of those certain thirty-four thousand seven hundred sixty-two (34,762) units of TDR (as hereinafter defined) numbered by the Zoning Administrator as Numbers 3715/001:00001 through 3715/001:34762, inclusive, as evidenced by that certain Statement of Eligibility of TDR ("3715/001 Statement of Eligibility") recorded on December 15, 1998, in the Official Records as Instrument No. 98-G482227. The 3715/001 Total TDR relates to that certain real property located in the City, commonly known as 1 Mission Street and more particularly described in the 3715/001 Statement of Eligibility. The 3715/001 Acquisition TDR are numbered by the Zoning Administrator as Numbers 3715/001:00001 through 3715/001:31396, inclusive, as evidenced by a certain second Statement of Eligibility of TDR recorded on February 28, 2006, in the Official as Instrument No. 2006-I135849. The 3715/001 Acquisition TDR were transferred pursuant to that certain Certificate of Transfer of TDR recorded on May 12, 2006, in the Official Records as Instrument No. 2006-I175301. The 3715/001 Acquisition TDR were transferred subsequently pursuant to that certain Amended Certificate of Transfer of TDR recorded on August 15, 2012 in the Official Records as Instrument No. 2012-J474176.

# EXHIBIT B

## TMG LLC OPERATING AGREEMENT

[to follow]

09995.112 2406194v1

EXHIBIT "B"

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## TMG FM LLC

This LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") of TMG FM LLC, a Delaware limited liability company (the "Company"), is made and entered into to be effective for all purposes as of _____, 2013 by TMG FM MEMBER LLC, a Delaware limited liability company (the "TMG Member"), and DAVID CHOO, an individual (the "Passive Member"). As used in this Agreement, the term "Member" shall mean each of TMG Member and the Passive Member (so long as each is a member of the Company), and/or any other person or entity who is admitted as a member of the Company in accordance with this Agreement and the Delaware Act, and "Members" shall mean all of them.

## RECITALS:

WHEREAS, the Company was formed as a limited liability company pursuant to the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101, et seq. (as amended from time to time, the "Delaware Act") by Danna Kozerski acting as an authorized person, by the filing of a Certificate of Formation for the Company with the Secretary of State of Delaware on April 30, 2013. On May 2, 2013, the Company's Application to Register a Foreign Limited Liability Company was filed with the Secretary of State of California by Cathy Greenwood as an authorized person. The Members hereby adopt and ratify the Certificate of Formation and all acts taken by the sole organizer in connection therewith, as well as the Application to Register a Foreign Limited Liability Company and all acts taken by Cathy Greenwold in connection therewith.

WHEREAS FM JV LLC, a Delaware limited liability company ("Master LLC"), formed pursuant to that certain Operating Agreement, dated as of May _____, 2013 (the "Master LLC Agreement"), intends to acquire (or has acquired), directly or indirectly, certain property located at the Northwest corner of First and Mission Streets in San Francisco, California (the "Property"). Pursuant to the Master LLC Agreement, the Company shall act as the Administrative Member of the Master LLC (the "Administrative Member") of the Master LLC.

WHEREAS, The Members formed the Company to serve as a vehicle to enter into the Master LLC Agreement, obtain a membership interest (the "Master LLC Interest") in the Master LLC, and perform the obligations thereunder as Administrative Member, and to transact such other business as the Members agree.

NOW, THEREFORE, the Members hereby agree as follows:

1. Formation: The Members agree to form the Company as a limited liability company under the Delaware Act, upon the terms and subject to the conditions set forth in this Agreement, as amended from time to time. Upon the filing of the Certificate of Formation of the Company with the Secretary of the State of Delaware, Danna Kozerski's powers as an authorized

18513\3661020.2

person of the Company within the meaning of the Delaware Act ceased, and upon the filing of the Company's Application to Register a Foreign Limited Liability Company with the Secretary of State of California, Cathy Greenwold's powers as an authorized person of the Company within the meaning of the Delaware Act ceased. Subject to Section 7(d) below, TMG Member is hereby authorized and directed to file any necessary further amendments or restatements to the Certificate of Formation of the Company in the office of the Secretary of State of the State of Delaware and such other documents as may be required or appropriate under the Delaware Act or the laws of any other jurisdiction in which the Company may conduct business or own property.

2. Name and Principal Place of Business:

(a) The name of the Company is "TMG FM LLC". TMG Member may change the name of the Company or adopt such trade or fictitious names for use by the Company as TMG Member may from time to time determine.

(b) The principal place of business and office of the Company shall be located at 100 Bush Street, Suite 2600, San Francisco, California 94104, or at such other place or places as the Members may from time to time designate.

3. Registered Agent and Registered Office: The name of the Company's registered agent for service of process shall be Corporation Service Company, and the address of the Company's registered agent and the address of the Company's registered office in the State of Delaware shall be 1013 Centre Road, Wilmington, Delaware 19805 registered agent and the registered office of the Company may be changed from time to time by TMG Member.

4. Term: The term of the Company shall be deemed to have commenced on the filing of the Certificate of Formation in the office of Secretary of State of the State of Delaware and shall continue until terminated pursuant to the provisions of this Agreement. The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Delaware Act.

5. Purpose: The principal purposes and business of the Company shall be to enter into and perform the Administrative Member's obligations under the Master LLC Agreement, and to have the rights, privileges and benefits of the Master LLC Interest and otherwise to acquire, own, hold, service, manage, operate, develop, lease, finance, refinance, mortgage, sell and otherwise deal directly or indirectly with the Property, and to conduct such other activities as may be necessary, advisable, convenient or appropriate to promote or conduct the business of the Company as set forth above. Subject to the foregoing limitation on purpose and to Section 7(d), the business of the Company may be conducted directly by the Company or through direct or indirect subsidiaries of the Company, and may include (for example and without limitation) entering into partnership agreements in the capacity of a general or a limited partner, becoming a member of a joint venture or a limited liability company, participating in forms of syndication for investment, owning stock in corporations and the incurring of indebtedness and granting liens and security interests on the real and personal property of the Company, it being agreed that each of the foregoing is an ordinary part of the Company's business.

6.  **Members**: TMG Member and the Passive Member are Members of the Company and shall be shown as such on the books and records of the Company. Except as expressly permitted by this Agreement, and subject to the provisions of Section 7(d) below, no other person shall be admitted as a Member of the Company, and no additional interest in the Company shall be issued, (i) without the approval of TMG Member, and (ii) if and only if such additional member being admitted is, or such additional interest is being issued to, an Affiliate of any current Member of the Company, or as otherwise required by Section 7(d), without the approval of the Passive Member (provided that consent to the admission of or issuance of interests to any such Affiliate shall not be unreasonably withheld, delayed or conditioned, if consent thereto is not otherwise required pursuant to Section 7(d)). The names and the addresses of the Members are as follows:

| Name | Address |
|---|---|
| David Choo | David Choo<br>660 Fourth Street, No. 155<br>San Francisco, CA 94107 |
| TMG FM Member LLC | 100 Bush Street<br>Suite 2600<br>San Francisco, CA 94104 |

7.  **Management**:

    (a)  [Subject to the authority afforded TMG Member pursuant to this Agreement, the Company shall be managed by the Members in their capacities as members of the Company.] Except as specifically set forth in this Agreement, including but not limited to Section 7(d) below, or to the extent delegated by the written agreement of TMG Member, (i) the business and affairs of the Company shall be vested in and controlled by TMG Member, which shall have the exclusive power and authority, on behalf of the Company, to take any action of any kind not inconsistent with this Agreement and to do anything and everything they deem necessary or appropriate to carry on the business of the Company; (ii) TMG Member shall have full, exclusive and complete discretion in the management and control of the Company for the purposes set forth above in Section 5; (iii) all decisions relating to the business and affairs of the Company including, without limitation, all decisions required or permitted to be made by the Members under this Agreement, may be made by, and all action proposed to be taken by or on behalf of the Company, may be taken by TMG Member (which may act by written consent); and (iv) TMG Member shall have full power and authority to execute all documents and take all other actions on behalf of the Company as the authorized member and thereby bind the Company and the Members with respect thereto. In dealing with TMG Member acting on behalf of the Company, no person shall be required to inquire into the authority of TMG Member to bind the Company.

    (b)  The implementation of decisions made by TMG Member may be through any person or entity selected by TMG Member. All decisions or actions taken by TMG Member within the scope of its authority hereunder shall be binding upon all of the Members and the Company. All approvals and consents required herein may be prospective or retroactive.

(c) TMG Member is, to the extent of its rights and powers set forth in this Agreement, an agent of the Company for the purpose of the Company's business, and the actions of TMG Member taken in accordance with such rights and powers shall bind the Company. TMG Member shall exercise its authority as such in its capacity as a Member of the Company. The Company shall not have any "managers" within the meaning of Section 18-101(10) of the Delaware Act.

(d) Notwithstanding anything to the contrary in this Agreement, the following (and only the following) shall require the prior written consent of the Passive Member: any action, approval, determination or other matter with respect to the Company or (to the extent of the Company's control with respect thereto) any direct or indirect subsidiary of the Company, including the admission of any person as a Member of the Company, the issuance of any additional interest in the Company, and any amendment of this Agreement or the organizational documents of any direct or indirect subsidiary of the Company, in each case that would impact in any materially adverse manner the rights of Passive Member hereunder or that would disproportionately dilute (relative to TMG Member's or any subsequently admitted Member's interest in Company profits) the Passive Member's interest in Company profits. For avoidance of doubt and without limitation: (1) any amendment to the Company's Certificate of Formation, this Agreement or the organizational documents of any direct or indirect subsidiary of the Company that alters the economic arrangement between the Members as set forth in Section 12 below shall require the Passive Member's prior written consent; (2) so long as not in violation of Section 12(a) below, the deferral of distributions to the Members shall not itself be deemed to disproportionately dilute the Passive Member for purposes of the foregoing clause, whether by reason of Company or subsidiary expenditures, debt or equity financings, the establishment of reserves in accordance herewith, determinations regarding market conditions and timing, project-specific or general investment strategies or decisions by any direct or indirect owner or other Affiliate of TMG Member, or any other occurrence that results in an increase in the amount that must be distributed to TMG Member as a condition to the Passive Member receiving any distributions under this Agreement; (3) except as expressly provided in the preceding sentence, the Passive Member shall not have any consent, approval or other rights with respect to the management of the Company or the Master LLC or the management, operation, development, construction, improvement, renovation, capitalization, financing, retention or disposition of any direct or indirect assets of the Company; and (4) the Passive Member shall not have (and hereby waives, to the fullest extent permitted by applicable law) any claims of any kind arising from the decisions, actions or omissions of TMG Member (except for intentional fraud).

(e) Subject to Section 21(l) below, TMG Member shall provide to the Passive Member a copy of each annual report with respect to the Property that is provided to the members of the Master LLC. Subject to the provisions of Section 18(a) below, the Passive Member expressly waives its right to information as provided in Section 18-305 of the Act.

(f) As used herein, "Affiliate" means, with respect to any person or entity, (i) any other person or entity directly or indirectly Controlling, Controlled by, or under common Control with such person or entity, or (ii) any other person or entity owning or controlling ten percent (10%) or more of the outstanding voting interests of such person or entity, or (iii) any officer, director, general partner or TMG Member of such person or entity, or (iv) any other person or entity which is an officer, director, general partner, TMG Member or holder of ten

percent (10%) or more of the voting interests of any other person or entity described in clauses (i) through (iii) of this definition; provided, however, that notwithstanding the foregoing, (1) neither the Company nor any direct or indirect subsidiary thereof shall be deemed to be an Affiliate of any Member (or of any of their respective Affiliates), and (2) no Member (or Affiliate thereof) shall be deemed to be an Affiliate of any other Member (or Affiliate thereof) solely by reason of the fact that such Members are Members of the Company. And "Control" means, when used with respect to any person or entity, the power to direct the management and policies of such person or entity, directly or indirectly, whether through the ownership of voting securities or other beneficial interests, by contract or otherwise (with "Controlling", "Controlled by" and "under common Control with" have correlative meanings).

8. Officers: The following officers are hereby appointed to act on behalf of the Company: Michael A. Covarrubias – CEO; Cathy Greenwold – EVP; Matt Field – Development Manager; Lynn Tolin – Sr. VP.

9. Initial Capital Contributions and Percentage Interests:

(a) TMG Member and the Passive Member have made initial contributions to the capital of the Company as follows:

TMG Member: $_____

Passive Member: $5,000,000.00

(b) Each Member shall have an interest in the Promote Distributions (defined below) expressed as a percentage of the whole ("Percentage Interest"), with the current Percentage Interest in the Company of each Member being as follows:

| Member | Percentage Interest |
|---|---|
| TMG Member | 85% |
| Passive Member | 15% |

10. Additional Capital Contributions: No Member shall be required to contribute any additional capital to the Company other than the initial contributions heretofore made, nor may the Passive Member contribute any capital to the Company without the prior written consent of TMG Member. No Member will have any obligation to restore any negative or deficit balance in its capital account, including any negative or deficit balance in its capital account upon liquidation and dissolution of the Company. Any additional funds required by the Company to meet its cash requirements may be provided by Company borrowings from third parties, upon such terms and conditions as determined appropriate by TMG Member (subject to Section 7(d) above), or TMG Member may from time to time make additional capital contributions to the Company, or both; the Passive Member shall have absolutely no right (or obligation) to make additional capital contributions to the Company at any time. For purposes of this Agreement, the term "Unreturned Capital Contributions" of a Member shall mean an amount calculated as

follows: (i) the initial capital contributions made by such Member pursuant to Section 9(a) above, plus (ii) any additional capital contributions made by such Member pursuant to this Section 10, minus (iii) all distributions to such Member pursuant to the provisions of Section 12(a)(i) below.

11. Tax Matters: Each and all of the provisions of Schedule A are incorporated herein and shall constitute part of this Agreement. Schedule A provides for, among other matters, the establishment and maintenance of capital accounts, and the allocation of profits and losses of the Company. The Company shall be operated as a partnership solely for state and federal income tax purposes.

12. Distributions and Certain Allocations:

(a) Distributions Generally. Subject to Sections 12(b) and 12(c) below, after (1) providing for the satisfaction of all the current debts and obligations of the Company, (2) any required payments on any loan or other financing, and (3) establishment of appropriate reserves as determined by TMG Member in good faith, and subject to compliance with Section 18-607 and Section 18-804 of the Delaware Act, the Company shall, at such times and in such amounts as may be determined by TMG Member in good faith (but not less than annually), distribute to the Members the Company's "Distributable Cash" (i.e., cash available for distribution as determined by TMG Member in good faith) as follows (provided further that before any such distributions are made any payments the Company receives from the Master LLC as a repayment of a Company Loan or as repayment of a Member Loan (as such terms are defined in the Master LLC Agreement) shall be distributed to TMG Member):

(i) [THIS SECTION TO BE CONFORMED TO HARMONIZE WITH THE TERMS OF THE LOI UPON FINALIZATION OF THE MASTER LLC OPERATING AGREEMENT.]

(b) Tax and Accounting. Each and all of the provisions of Schedule A, Tax Matters, are incorporated herein and shall constitute part of this Agreement. Schedule A provides for, among other matters, the establishment and maintenance of capital accounts, and the allocation of profits and losses of the Company

(c) Winding Up Year; Liquidating Distributions. Following the satisfaction of all debts and liabilities of the Company and all expenses of liquidation (whether by payment or the making of reasonable provision for payment thereof), the proceeds of the liquidation and any other funds of the Company shall be distributed in accordance with Section 5 of Schedule A, Tax Matters (after deducting from the distributive share of a Member any sum such Member owes the Company).

(d) Fees Payable to TMG. The parties acknowledge that the Master LLC Agreement and other documents may from time to time provide for the payment to TMG Member and its Affiliates of certain property management fees, development fees, leasing override fees and other similar fees, reimbursements or compensation (collectively, "Fees"). Passive Member hereby agrees that Passive Member shall have absolutely no right, title or

Case: 11-49300    Doc# 298-5    Filed: 05/16/13    Entered: 05/16/13 18:41:19    Page 20 of 20