```
 1                IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                         OAKLAND DIVISION

 3   In re:                        )   Case No. 11-49300 RLE
                                   )   Chapter 11
 4   FIRST STREET HOLDINGS NV,     )
     LLC,                          )   October 15, 2014
 5                                 )   Oakland, California
           Debtor.                 )   2:00 p.m. Calendar
 6                                 )
                                   )   APPLICATIONS FOR COMPENSATION
 7                                 )   (577, 578, 580); TRUSTEE'S
                                   )   MOTION FOR AUTHORITY TO
 8                                 )   ISSUE TAX DISTRIBUTION
                                   )   (588)
 9   _____)

10                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE ROGER L. EFREMSKY,
11                 UNITED STATES BANKRUPTCY JUDGE.

12   APPEARANCES:

13   For Richard Kipperman,        Miriam Manning
     CMR Liquidating Trustee,      PACHULSKI, STANG, ZIEHL & JONES
14   Interested Party:             150 California Street, 15th Floor
     (Telephonic)                  San Francisco, CA  94111-4500
15                                 (415) 263-7000

16   For David Choo:               Robert G. Harris
                                   BINDER & MALTER, LLP
17                                 2775 Park Avenue
                                   Santa Clara, CA  95050
18                                 (408) 295-1700

19   For Richard Johnson,          Michael St. James
     Minority Member:              ST. JAMES LAW, P.C.
20                                 155 Montgomery Street, Suite 1004
                                   San Francisco, CA  94104
21                                 (415) 391-7566

22   For the Trustee:              David A. Honig
                                   JOSEPH & COHEN, P.C.
23                                 1855 Market Street
                                   San Francisco, CA  94103
24                                 (415) 817-9200

25
```

```
1   Electronic Court          Nash Singh
    Recorder:                 UNITED STATES BANKRUPTCY COURT
2                             P.O. Box 2070
                              Oakland, CA  94604-2070
3                             (510) 879-3600

4   Transcription Service:    Kathy Rehling
                              311 Paradise Cove
5                             Shady Shores, TX  76208
                              (972) 786-3063
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          Proceedings recorded by digital sound recording;
          transcript produced by transcription service.
```

1    OAKLAND, CALIFORNIA - OCTOBER 15, 2014 - 2:43 P.M.

2         THE COURT:  All right.  Returning to the last matter

3    on calendar, Line Item #3, in the matter of First Street

4    Holdings NV, LLC, Case No. 11-49300.

5         MR. HONIG:  Good afternoon, Your Honor.  David Honig

6    for Trustee James Lowe, who is present in court, as is his

7    accountant, Michael Gabrielson.

8         THE COURT:  All right.

9         MR. LOWE:  Good afternoon.

10        MR. HARRIS:  Good afternoon, Your Honor.  Robert

11   Harris appearing for David Choo.  With me in court is Mr. Joe

12   Moore, who is a partner at the Armanino McKenna accounting firm

13   and will be here to answer technical tax questions.

14        THE COURT:  All right.  Good afternoon.  Good

15   afternoon, sir.

16        MS. MANNING:  Good morning, Your Honor.  Miriam

17   Manning on behalf of the Trustee, Richard Kipperman, --

18        THE COURT:  Ms. Manning?

19        MS. MANNING:  -- in the CMR bankruptcy cases.  Yes.

20        MR. ST. JAMES:  Good afternoon, Your Honor.  Michael

21   St. James appearing on behalf of minority member Richard

22   Johnson.

23        THE COURT:  All right.  All right.  I'm going to take

24   up Line Items A, B, and C first.  Well, I'll take up the

25   application for compensation of Gabrielson & Company,

1  Trustee's Accountant, seeking fees of $74,322 and expense

2  reimbursement of $367.40.  I'm not aware of any opposition,

3  Mr. Honig.  Are you?

4          MR. HONIG:  No, Your Honor.  We've received no

5  response of any kind to any of the applications.

6          THE COURT:  All right.  Anybody else wish to be heard

7  on Line Item A?  (No response.)  All right.  There is no one.

8  The Court has reviewed the same.  I will approve it as prayed

9  for.

10     Next is the application for compensation of James -- well,

11 actually, I'll take it up Line Item 2.  It's -- or excuse me,

12 C.  The first interim application for compensation of David A.

13 Honig, Trustee's Attorney, seeking fees totaling $244,739 and

14 expense reimbursement of zero for a period from August 12,

15 2013 to August 31, 2014.  Again, Mr. Honig, I'm not aware of

16 any written opposition, are you?

17         MR. HONIG:  No, Your Honor.

18         THE COURT:  All right.  Anybody else wish to be heard

19 on Line Item C?  (No response.)  All right.  There is no one.

20 The Court has reviewed the application and finds everything in

21 order and will approve it as prayed for.

22     And next is Line Item B, which is the application for

23 compensation for James S. Lowe, II, Trustee.  Seeks fees

24 totaling $72,150 and expense reimbursement totaling $2,426.80

25 for the period from August 8, 2013 to August 31, 2014.  The

1  Trustee notes that this exceeds the cap but asks that it would

2  be appropriate to take into account all the pending

3  professional fees requested to the extent the amounts sought

4  are actually approved with regards to Line Item A and C, which

5  have been approved.  Based on that, the Trustee believes that

6  it would be appropriate to approve all of the professional

7  fees.  Approved total disbursements would be $1.812 million

8  and the interim cap would be $77,617.34.  And again, I'm not

9  aware of any opposition, Mr. Honig.  Are you?

10          MR. HONIG:  No, Your Honor.

11          THE COURT:  All right.  Anybody else wish to be heard

12  on Line Item B?  (No response.)  All right.  There is no one.

13  Then the fees totaling $72,150 will be approved along with

14  expense reimbursement of $2,426.80.

15      All right.  Next I turn to the Trustee's motion for

16  authority to issue tax distribution to pay taxes due and owing

17  filed by Mr. Choo.

18          MR. HONIG:  Your Honor, this is a joint motion

19  precipitated by the fact that I believe it was Wednesday

20  afternoon of last week it was brought to the Trustee's

21  attention that the long-disputed, long-awaited 2013 tax

22  returns for the Debtor entities have been completed by the

23  debtors out of possession's accountant, the Armanino firm,

24  with the resulting conclusion that the pass-through entities'

25  posture would result in a tax liability of Mr. Choo as either

1  100 percent or a majority equity holder of tax liabilities

2  approximating $5.45 million.

3       As the Court is perhaps aware from the motion, the estate

4  is currently holding a little over $12.6 million in cash, and

5  a generous reserve for all anticipated claims through the end

6  of the case would be $4 million.  And so the Trustee and his

7  accountant and I are prepared to make the payments requested

8  on the Court's finding that those payments are appropriate.

9  We know that it's our understanding that, under the operating

10  agreements that govern these debtors under state law, the

11  Debtors' equity holders would be entitled to distributions to

12  permit them to pay taxes arising as a consequence of capital

13  gain.

14       I also wanted to note that although the Trustee's

15  accountant has reviewed the presentation prepared by the

16  Armanino firm, our consent to the proposed distribution to Mr.

17  Choo is not intended as ratification of that calculation,

18  because that actually is not the estate's concern.

19       There are two other related requests for distribution,

20  both of which are reflected in filings with the Court.  One is

21  a request by the actual or potential minority equity holder,

22  Mr. Johnson and his controlled entity, for what I would call,

23  for lack of a better term, a parallel distribution.  And in

24  addition, there has been a filing by the CMR trustee with

25  respect to a settlement agreement between Mr. Choo and the CMR

1  estate, with which I have to confess this trustee is not

2  familiar.  But I know that they want to be heard from today.

3         THE COURT:  All right.  Mr. Harris?

4         MR. HARRIS:  Thank you, Your Honor.  First, I want to

5  thank the Court for accommodating us on extreme shortened

6  time.  It is very much appreciated.  There is a $400,000 tax

7  penalty at issue, and that's why we're here on shortened time.

8     I also want to thank the Trustee.  Mr. Lowe has been very

9  accommodating.  This is an unusual situation.  It's a surplus

10 case.  And I agree with the Trustee's disposition and his

11 statement of the facts.

12    Your Honor, I want to point out that what those numbers

13 yield is $3.25 million in excess funds.  That's the surplus in

14 this estate, if you will, if the tax, the $5.45 million, is

15 approved.  Now, what we essentially have is an equity holder,

16 Mr. Choo, whose taxes are due.  We know that.  There's no

17 doubt.  I don't think it's disputed by anyone that there's

18 $5.45 million or thereabouts that will come owing when the tax

19 return is signed probably somewhere close to midnight tonight.

20 Mr. Moore would tell the Court, if you have any questions,

21 that this is probably the most complicated tax return he's

22 ever seen.  Mr. Choo's empire is wide-ranging, and there are a

23 lot of tax consequences to deal with.  Mr. Johnson -- excuse

24 me.  Let me first take up the question of Trustee Kipperman's

25 interest in this.

1      Mr. Kipperman is party to a settlement agreement with Mr.

2 Choo arising out of the CMR bankruptcy, whereunder a 10

3 percent distribution is to go to Kipperman --

4           THE COURT:  Uh-huh.

5           MR. HARRIS:  -- upon the receipt of funds which are

6 defined as net gain under the agreement.  It's essentially

7 cash.  We have been successful in negotiating a resolution of

8 the Trustee's interest at this point.  We have a form of order

9 that counsel can advise the Court is agreed that would allow a

10 $200,000 holdback from this $3.25 million cash that Mr. Lowe

11 is holding, and that it would be without prejudice --

12           THE COURT:  Mr. Harris, I'm confused, because the

13 amount that's requested for the Trustee -- maybe I don't

14 understand it.  You're asking for $5,450,000 to be immediately

15 disbursed on behalf of Mr. Choo, and who is going to be -- is

16 it going to be disbursed directly to the taxing authorities?

17           MR. HARRIS:  Yes, Your Honor.

18           THE COURT:  And it constitutes a distribution to Mr.

19 Choo?

20           MR. HONIG:  Your Honor, our interpretation, it's a --

21 this is a little bit more dramatic than I mean it to be, but

22 we're holding checks to be issued as the Court directs because

23 today is the deadline.

24           THE COURT:  Right.

25           MR. HONIG:  But our interpretation of it is that

1  these distributions would be made by court order at the

2  direction and for the benefit of Mr. Choo.

3          THE COURT:  Right.

4          MR. HARRIS:  But -- I'm sorry.

5          THE COURT:  So, you've got an arrangement reached

6  with Ms. Manning on the phone for CMR --

7          MR. HARRIS:  Yes.

8          THE COURT:  -- and they're saying that, with the

9  money left over that the Trustee has, roughly $3.25 million,

10 Mr. --

11         MR. HONIG:  Yes, Your Honor.

12         THE COURT:  Okay.  You had indicated it was closer to

13 $4 million, but it's $3.25 million?

14         MR. HONIG:  No, the $4 million -- let's start at the

15 top.  The Trustee is -- the estate is holding cash of between

16 $12.6 million and $12.7 million at this time.

17         THE COURT:  Right.

18         MR. HONIG:  We believe that a generous allotment for

19 all the disputed claims and potential claims and liabilities

20 of the estate at 100 percent or more would be $4 million.  So

21 that leaves between $8.6 and $8.7 million available for

22 disposition.

23         THE COURT:  Yes.

24         MR. HONIG:  That means that there is something in

25 excess of $3 million available even after payment of all of

1   the requested disbursements on behalf of Mr. Choo.

2           THE COURT:  Okay.

3           MR. HARRIS:  So, back to Trustee --

4           MS. MANNING:  Your Honor?

5           MR. HARRIS:  I'm almost done with the Kipperman part.

6   Mr. Kipperman said, well, look, I'm entitled to 10 percent of

7   the $5.45 million because that's a distribution.

8           THE COURT:  Right.

9           MR. HARRIS:  At the closing of this escrow, Mr.

10  Kipperman actually received $240,000 by order of the Court.

11  It was essentially an advance on a distribution based upon

12  this 10 percent settlement agreement --

13          THE COURT:  Okay.

14          MR. HARRIS:  -- that I just mentioned.  And so the

15  negotiation was, okay, well, it's something less than

16  $545,000.  And over the course of the morning, Mr. Choo and

17  counsel for the Trustee and I spoke, and the agreement is that

18  there'll be a set-aside from the three -- $3 or $3.25 million

19  that Trustee Lowe is holding for a further 10 percent

20  distribution, without prejudice to Trustee Kipperman saying,

21  well, it could be more, it could be closer to -- I think the

22  number was $305,000 this morning, or it could be less because

23  Mr. Choo has arguments that actually the number should be

24  closer to $270,000.

25          THE COURT:  And the number that the two of you agreed

1  on is how much?

2          MR. HARRIS:  $200,000.

3          THE COURT:  $200,000?

4          MS. MANNING:  It's $205,000, Your Honor.

5          MR. HARRIS:  $205,000.  Excuse me.  I misspoke.

6          THE COURT:  Well, why not -- why do a holdback?  Why

7  not just go ahead and distribute that to CMR now?

8          MR. HARRIS:  Well, Your Honor, Mr. Choo's --

9          THE COURT:  Wait.  I want to hear from Ms. Manning on

10  that.

11          MR. HARRIS:  Oh, I'm sorry.

12          THE COURT:  Ms. Manning, why not distribute -- the

13  order is that when Mr. Choo gets his money, you've got an

14  advance already according to Mr. Harris, but if you believe

15  you're owed at least another $205,000 and it's without

16  prejudice that it may be more, but why have -- why not take

17  the distribution now?

18          MS. MANNING: Your Honor, we have no problem with

19  taking the distribution now.  I was not on the call earlier

20  with Mr. Harris.  My partner David Bertenthal was.  And I

21  think the resolution was, there's some dispute as to exactly

22  how much the Trustee may or may not be entitled to, and the

23  amount that was agreed to would be $205,000, and it would be

24  held by the Trustee in the First Street case pending a

25  resolution of the CMR Trustee's entitlement to the funds by

1  Judge Carlson.  We have no problem --

2        THE COURT:  All right.  Well, pursuant to Judge

3  Carlson's order, then, if we're going to do a distribution on

4  behalf of Mr. Choo, and if at least at the -- and again,

5  there's no -- the Court's not saying it's $205,000.  It may be

6  less; it may be more.  But at least the parties have agreed to

7  that.  There should be a $205,000 distribution to the CMR

8  Trustee at this time as well that should go out

9  simultaneously.  I can't see holding it back.

10        MS. MANNING:  That's fine, Your Honor.

11        THE COURT:  Mr. Harris, any objection to that?

12        MR. HARRIS:  Well, Your Honor, as long as it's

13  completely without prejudice to --

14        THE COURT:  Absolutely.  It's with the understanding

15  that the Court's not making a determination whether the amount

16  being released here of the $5,450,000 for federal and state

17  taxes, which I would note that -- it's Mr. Morris?

18        MR. MOORE:  Moore.

19        THE COURT:  Mr. Moore has indicated it's actually, at

20  least in the analysis, is $5,269,511.  But given that it's a

21  very complicated set of documents he's had to review, he's

22  trying to build in a cushion to protect to avoid any

23  penalties, which I have no problem with.  But I think, with

24  that being said, I would just want the $205,000, again,

25  without prejudice to either side, whether it goes up or down,

1  but the money should be released now.  Mr. Honig, is there any

2  problem with that?

3           MR. HONIG:  Your Honor, I would suggest two things,

4  actually.  I'm getting ahead of myself a little bit.  But with

5  respect to the distribution to Mr. Kipperman, I assume that

6  since that isn't a tax issue, it would be acceptable for us to

7  wire that tomorrow?

8           THE COURT:  I would have no problem.  Ms. Manning,

9  you wouldn't object to that, would you?

10          MS. MANNING:  A wire transfer would be fine, Your

11  Honor.  Again, I have not considered any tax -- adverse tax

12  consequences of getting the funds now, but assuming there are

13  none, we have no problem with that.

14          THE COURT:  All right.  Again, as Mr. Harris said,

15  it's without prejudice to either side disputing the numbers,

16  whether they go higher or lower per respective party.

17      Anything else, Mr. Honig?

18          MR. HONIG:  The only other point, Your Honor, is that

19  at some point this afternoon I'm sure that we're going to be

20  talking about a form of order, and before we even get to that,

21  I want to be clear that, because of timing considerations, we

22  are going to be looking for comfort from the Court that we can

23  write checks and hand them to these gentlemen as ordered

24  today, even before the written order hits the docket.

25          THE COURT:  Absolutely.

1          MR. HONIG:  Thank you, Your Honor.

2          THE COURT:  I will be very clear about that.

3          MR. HONIG:  Okay.

4          THE COURT:  Anything else other than that?

5          MR. HONIG:  That's all for now, Your Honor.

6          THE COURT:  All right.  I think, having said that,

7    the only remaining issue is having to do with Mr. St. James'

8    client.  And he's made a request that there be a corresponding

9    distribution to Mr. Richard A. Johnson and R.A. Johnson

10   Properties.  How much -- have you done a calculation on what

11   you think that amount is?

12         MR. ST. JAMES:  Yes.  If Mr. Harris would like to

13   finish, he can, or I can --

14         THE COURT:  All right.  Have the two of you talked

15   and have you reached any agreement on this, or --

16         MR. ST. JAMES:  We have talked.  We have

17   unfortunately not reached an agreement.

18         THE COURT:  Okay.

19         MR. HARRIS:  If I may, Your Honor, just to finish up

20   the prior point.  Of course, to the extent that there is a

21   dispute over the amount owing to Mr. Kipperman, that's before

22   Judge Carlson.  So, that's --

23         THE COURT:  Right.

24         MR. HARRIS:  That's that.

25      You know, with respect to Mr. Johnson, Your Honor, I think

1  you just said it.  I mean, Mr. Johnson said, in effect, me
2  too.  Because he claims to be an interest holder, and facially
3  he is listed as an equity security holder.  I can't deny that.
4  There is a state court lawsuit that was brought, removed here.
5  It's going to be heard by Mr. Cooper in a BDRP proceeding
6  sometime relatively soon.  And I think what we need to bear in
7  mind here is why are we doing this distribution?  I said at
8  the beginning of the hearing, well, this is a tax that's due
9  and owing of $5.45 million by Mr. Choo, assuming that he is
10 the 100 percent equity owner.

11            THE COURT:  Uh-huh.

12            MR. HARRIS:  Mr. Johnson doesn't have a tax owing
13 right now.  He's not subject to this requirement that he get
14 something out by the end of the day.  Mr. St. James will bring
15 up the fact that, as I informed him, that Mr. Johnson didn't
16 receive a 1099 or a K-1.  He hasn't realized income in this
17 year, and so there is no tax owing today.  I feel certain that
18 if an appropriate request is brought that we would stipulate
19 to shortened time, but right now we were able to rough out
20 with Mr. Moore the general concept that perhaps Mr. Johnson
21 could have a tax liability as much as $475,000, but he doesn't
22 have a prepared return so we don't really know yet.

23    My position, Your Honor, is that the Trustee is holding
24 sufficient funds to pay that amount in full.  And I say this
25 with the recognition that, to the extent that there is an

1  additional penalty incurred because something is not paid

2  today, that the estate will bear that.  Mr. Choo acknowledges

3  that that would be the estate's responsibility.  Not

4  necessarily penalties incurred until now, but certainly

5  penalties incurred as a result of what happens here today if

6  there is not a payment.

7          THE COURT:  Okay.

8          MR. HARRIS:  Thank you, Your Honor.

9          THE COURT:  All right.  Thank you.

10         MR. ST. JAMES:  Thank you, Your Honor.  Just a few

11 points.  First of all, as is demonstrated by the attachments

12 to the declaration that was attached to our papers, there is

13 an assignment agreement signed by Mr. Choo that assigned 7

14 percent of the membership interest in First Street Holdings to

15 my client.  When the bankruptcy case was filed for First

16 Street Holdings, it reflected in the list of equity security

17 holders that my client had an undisputed 7 percent interest.

18 Likewise, in response to Question 21 of the Statement of

19 Financial Affairs, it also identified my client as holding a 7

20 percent undisputed interest.

21     As the Court is well aware, once there was a lot of money

22 to be had, all of the undisputed claims -- and in this case,

23 interests -- became disputed because Mr. Choo no doubt

24 regretted sharing the money with these people.  He did file a

25 complaint seeking a determination that my client really

1   doesn't have that 7 percent interest.  In prior briefing for a

2   motion that is now still being held off pending the BDRP, we

3   walked through the arguments.  And candidly, Your Honor, they

4   are specious.  And one of the arguments is that the LLC

5   agreement required lender consent before you could assign an

6   interest.  Mr. Choo decided not or didn't ask for lender

7   consent, and now that he doesn't want to share an interest

8   with my client, he ought to be able to retroactively go back

9   and say, because he didn't get lender consent, the interest

10  isn't -- wasn't really transferred.

11      It seems to me that if we have to decide things today --

12  and obviously, a week ago none of us knew that we had to

13  decide things today -- if we have to decide things today, I

14  think the only rational way to do it is on the basis of record

15  title, and record title is that my client has 7 percent of the

16  membership interest.

17          THE COURT:  Okay.  Mr. St. James, I don't disagree

18  with you on that.  My question is more to the point of what

19  Mr. Harris says: why not let Mr. Lowe hold the funds in the

20  interim, even if we carve out specifically saying, okay, if

21  you've got, after everything's paid, conservatively, whatever

22  the Trustee's got left over, carve out, so there'd be two

23  pools, a general fund that we don't know who, there might be

24  some other creditors or whatever, attorneys' fees, but we'll

25  specifically carve out -- you all have agreed on $475,000.

1  Why not let Mr. Lowe hold onto that fund in the interim?  Is

2  there really a need to immediately put the money out to Mr.

3  Johnson at this time?

4        MR. ST. JAMES:  Sure.  Sure.  Mr. -- what we've heard

5  in argument today from Mr. Harris is a fallacy that if you

6  take only a minute to think about it you can see it's a

7  fallacy.  What he said is he, Mr. Johnson, hasn't realized

8  income yet because no K-1 has been distributed to him yet.

9  Well, Your Honor, that's much like saying if I don't file my

10 tax return then I didn't get any income.  The K-1 is not

11 determinative.  The K-1 makes it easier for Uncle Sam to come

12 after me if I don't pay my taxes.  But the fact of the matter

13 is that if in fact Mr. Johnson was a 7 percent interest holder

14 in 2013, then he does in fact have his share of the 2013

15 capital gain.  And as Mr. Moore said, that's about $1.8

16 million or $1.4 million of capital gains, which is about

17 $475,000 of aggregate tax, which is due today.

18      Now, admittedly, nobody's told Mr. Johnson in the form of

19 a K-1 yet because Mr. Choo has decided not to give him K-1s or

20 even give him any tax information until this motion was filed.

21 And so the taxing authorities also don't know today.  But if

22 for example we do what we're supposed to do and I think what

23 we want to do, which is get the tax information and prepare

24 amended returns and file amended returns, what those returns

25 will presumably show is we owed $475,000 today and, oh, by the

way, it's sitting in Mr. Lowe's account and we can ask him if

maybe someday he'd like to give it to us, which would mean

that we would also owe penalties on that.  Now, I don't think

that that's really appropriate.  I don't think that if the --

if the premise is that --

            THE COURT:  Okay.  Let me, because --

            MR. ST. JAMES:  Sorry.

            THE COURT:  -- I'm with you.  My question is, are you

in a position that the Trustee could make the payments to the

taxing authorities tonight?  To say, well, here's the money, I

want it paid out?  And it's going to be like a prepayment.  We

haven't filed the returns or done anything yet, but we think

it's coming, but we want to go ahead and pay it because we owe

you the money now.

            MR. ST. JAMES:  That's exactly where we are.  What we

said is that what we should be getting is a distribution of 7

percent of the amounts that are being distributed for Mr.

Choo.  What that would amount to is, for the $5 million that's

going to the IRS for him, that would be $350,000 going to the

IRS for us.  Of the $450,000 going to the Franchise Tax Board

for him, that would be $31,500 going to us.  And you can see

that that's not going to add up to $475,000, so we're not

having all of our taxes covered the way he is, but as rough

justice, the best we can do in these circumstances is say,

let's distribute 7 percent.  That's the only thing we can

1  figure out at this stage.

2      And yes, if I get the checks today, I bring them back to

3  my office, I have vouchers and envelopes at my office, and

4  they go out to the IRS and the FTB. And then we sit down with

5  the various accountants and try to work on amended returns and

6  try to persuade people to issue K-1s for the past years so

7  that we can get this done. But Mr. Johnson would like to pay

8  his taxes. It's not his fault that Mr. Choo decided to

9  withhold K-1s.

10         THE COURT: Well, I understand. My point is, these

11  funds would be paid over to the taxing authorities this

12  evening?

13         MR. ST. JAMES: Right. The checks would be issued

14  today payable to the taxing authorities.

15         THE COURT: And you said $350,000 to the IRS, $31,000

16  to the Franchise Tax Board?

17         MR. ST. JAMES: $31,500.

18         THE COURT: $31,500? That's exactly what I had

19  calculated. But you're asking for -- Mr. Harris had said the

20  -- he had thrown out the figure of $475,000, building in this

21  --

22         MR. ST. JAMES: No.

23         THE COURT: No?

24         MR. ST. JAMES: He said that that might be our tax

25  liability.

1           THE COURT:  Okay.

2           MR. ST. JAMES:  But that would be the equivalent of

3    10 or 12 percent of what Mr. Choo is getting.  I haven't made

4    that argument.

5           THE COURT:  All right.  So what you're asking for is

6    roughly $381,500, of which $350,000 would go to the IRS and

7    $31,500 to the Franchise Tax Board?

8           MR. ST. JAMES:  Correct.

9           THE COURT:  All right.  And Mr. Harris, to the extent

10   that I'm allowing Mr. Choo to pay 100 percent of his taxes and

11   actually building in almost a 10 percent cushion on that, why

12   wouldn't it be equitable to basically allow these funds, which

13   doesn't even have a 10 percent cushion built in but it's at a

14   lower end that counsel is comfortable with, the $350,000 to

15   the IRS and the $31,500 to the Franchise Tax Board, and have

16   those paid over now?

17          MR. HARRIS:  Excellent question, Your Honor.  The

18   answer lies in the what-ifs.  What if Mr. Johnson is

19   ultimately determined by you or in BDRP not to have a 7

20   percent interest?

21          THE COURT:  And the same thing: what if I'm paying

22   100 percent out to Mr. Johnson -- or to Mr. Choo and it turns

23   out he's only got a 93 percent interest?  I've got money

24   hanging there arguably, I do acknowledge that.  That is one

25   difference here.

1          MR. HARRIS:  Well, and where I was leading with that

2   -- and that's a different question and I will answer that in a

3   moment -- is we don't know what Mr. Johnson's tax return says

4   right now.  We don't know what he's claimed as income, hasn't

5   claimed as income.  And more particularly, if he owes taxes

6   for prior years.  It's notoriously hard to get money back from

7   the taxing authorities once it's gone out.  And so if it turns

8   out that he isn't a 7 percent interest holder, that money is

9   very probably gone from the estate.

10      We think that the more risk-averse course is to simply

11  have the Trustee hold the money for now.  As soon as returns

12  are ready, we consider what is owed, and we pay -- we agree to

13  pay the penalties.  Because, again, I think, before we get

14  back here, before those tax returns are filed, we're going to

15  have had the BDRP, and if the BDRP fails you will be able to

16  rule on whether there is a valid interest here or not, Your

17  Honor.  That's why I'm suggesting Course A, which is that the

18  Trustee holds the money and agree to pay the penalties if

19  necessary.

20          MR. ST. JAMES:  Your Honor, I can't argue that Mr.

21  Harris's position is completely unreasonable.  I would note

22  one thing that has grated on me throughout this hearing, which

23  is Mr. Johnson is a 7 percent member and is entitled to 7

24  percent of the residue.  Mr. Harris cheerfully offers up money

25  to Trustee Kipperman, which is owed only by Mr. Choo and not

1  by Mr. Johnson, and says the estate can pay it.  Now he says

2  that if we don't get money and we suffer tax penalties, the

3  estate can pay it.  Well, the estate shouldn't be paying any

4  of Mr. Choo's debts, and we shouldn't be bearing even 7

5  percent of these debts.

6      Now, if the question is one of weighing, are we better off

7  with Mr. Choo agreeing to reimburse in some fashion that the

8  Court actually enforces all of the penalties and losses that

9  we suffer as a result of not getting equitable treatment, I

10 think if that's -- if that is enforceable and can be

11 implemented, I can't argue that we need to have the money

12 disbursed.

13     What I am arguing is that up until I filed my opposition,

14 this was just going to be money for Mr. Choo, and Mr. Johnson

15 can wait and hope that something good happens to him.  And if

16 the result of this exercise is either that Mr. Johnson's tax

17 debt gets paid ratably at the same time and in the same way as

18 Mr. Choo's, or that Mr. Choo, in some very enforceable way,

19 actually indemnifies and holds him harmless for any of the

20 consequences of not paying taxes, which has been going on now

21 for some years because Mr. Choo won't give him K-1s, I can't

22 say that one is necessarily the only right course.  I think

23 either could be.

24         THE COURT:  Given the history of this case, I'm going

25 to order that the funds be paid out now to the taxing

1  authorities, because that's another interest, is if those are

2  funds that are due.  And the record holder here of a 7 percent

3  interest, at least from a prima facie standpoint, is in fact

4  Mr. Johnson.  And even if I allowed the Trustee to hold the

5  funds, Mr. Choo has made it very clear that he has been

6  litigious, and I think it would be appropriate here that these

7  funds be distributed since I've ordered the money to be

8  distributed to CMR and that Mr. -- the estate is effectively

9  paying Mr. Choo's taxes to avoid a $400,000 penalty, which I

10  think is appropriate, I think the motion was well taken.  But

11  I think I'm going to order here that the $350,000 be paid to

12  the IRS on behalf of Richard A. Johnson and R.A. Johnson

13  Properties, a California LLC.  Is that the way you want it, or

14  --

15          MR. ST. JAMES:  It actually -- it is a flow-through

16  entity, so it flows directly through to Mr. Johnson's tax

17  return.

18          THE COURT:  Then so Richard A. Johnson, payable on

19  behalf of Richard A. Johnson, the $350,000 to the IRS and

20  $31,500 to the Franchise Tax Board.

21          MR. ST. JAMES:  Thank you, Your Honor.

22          THE COURT:  All right?

23          MR. HONIG:  Your Honor, as I understand it, those

24  payments will be characterized for the moment as estimated tax

25  for Calendar 2013?

1          THE COURT:  That's my understanding.  Mr. Harris, do

2    you agree with that?

3          MR. HARRIS:  I do, Your Honor.  And by way of

4    clarification, that should be on top of the $5.45 million,

5    because we're not holding it out of --

6          THE COURT:  Correct.

7          MR. HARRIS:  -- the $3.25 million anymore.

8          THE COURT:  The money you're -- just for the record,

9    that Mr. Choo -- the Trustee is going to be doing a check on

10   behalf of Mr. Choo to the IRS, the $5 million, to the

11   Franchise Tax Board for the $450,000.  Then there will be an

12   additional payment of $205,000.  Those will be on behalf of

13   the estimated taxes due for 2013.  Then there will be a

14   $205,000 distribution to Richard M. Kipperman, Liquidating

15   Trustee of the CMR Liquidating Trust, and that will be -- how

16   do you want --

17         MR. HONIG:  We'll obtain wire transfer instructions

18   from Mr. Kipperman's counsel.

19         THE COURT:  All right.  And that's being paid

20   pursuant to Judge Carlson's order.  And to the extent there's

21   any dispute as to that amount, that's before Judge Carlson.

22   I'm just giving credence to Judge Carlson's order that with

23   distributions to Mr. Choo there should be a simultaneous

24   distribution of at least 10 percent, but the parties have

25   agreed on this $205,000 number.  So that will go out by wire

1   transfer. Ms. Manning will provide that information to Mr.

2   Honig no later than tomorrow morning, ideally, if not today.

3      And then for Richard A. Johnson, there will be a

4   distribution of $350,000 to the IRS and $31,500 to the

5   Franchise Tax Board. Those will be estimated taxes for 2013

6   for his 7 percent membership interest, which there's no

7   finding by the Court, it's just that the taxing authorities

8   should be paid, and if I -- because Mr. Choo is receiving

9   these funds to pay 100 percent, that if he's successful in

10   that litigation, he's being protected, and the same thing is

11   true, that if Mr. Johnson prevails at 7 percent, he's

12   protected. And to the extent that there is an overpayment one

13   way or the other, that will have to be dealt with. But I

14   think under the circumstance it would be appropriate.

15      Those distributions can be made based on the oral rulings

16   from the bench today.

17      And furthermore, with regards to the amended order Mr.

18   Harris uploaded to deal with the service issue effective the

19   14th, that order will be signed by this Court as soon as I get

20   off the bench.

21         MR. HONIG: Thank you, Your Honor.

22         THE COURT: All right. Anything else?

23         MR. HARRIS: Just by way of clarification. If there

24   is an overpayment, then presumably the Trustee or the residual

25   beneficiaries would have the right to seek recovery of those

1   funds from the appropriate taxing agency?

2           MR. HONIG:  Your Honor, we have given that a little

3   bit of thought.  I'm sure not enough.  But generally speaking,

4   if it turned out when the dust settled on the 2013 returns for

5   any number of reasons that this represented an overpayment, we

6   would request that Mr. Johnson seek a refund of the

7   overpayment in cash.  That would be much easier to deal with

8   in terms of returning the funds to the estate or to Mr. Choo

9   as necessary.  But that scenario would arise only if there

10  wasn't some other resolution, either a settlement disposition

11  or order of this Court, that didn't result in the same funds

12  being applied to some other tax requirement that arose out of

13  the ownership interest.  I speak only to the mechanics --

14          THE COURT:  Right.

15          MR. HONIG:  -- of recovering the funds if that proves

16  necessary.

17          THE COURT:  All right.

18          MR. HARRIS:  I think that's a good suggestion, Your

19  Honor.

20          THE COURT:  I think the Court will adopt that.  Mr.

21  St. James, any objection to that?

22          MR. ST. JAMES:  None whatsoever, Your Honor.

23          THE COURT:  All right.  Very good.  And then with

24  respect if there's an overpayment to Mr. Choo at the end of

25  the day should shake out, those will be funds that will be

1　going back to him ultimately anyway.

2　　　　　MR. HONIG:  Correct, Your Honor.

3　　　　　THE COURT:  All right.  Anything else?

4　　　　　MR. HARRIS:  No, Your Honor.

5　　　　　THE COURT:  All right.

6　　　　　MS. MANNING:  Your Honor, may I say one thing,

7　please?

8　　　　　THE COURT:  This is Ms. Manning?

9　　　　　MS. MANNING:  Yes.  Thank you, Your Honor.  We worked

10　up the form of the order that we wanted, and I would ask that

11　Mr. Harris simply change the word "reserve" in Paragraph 2 to

12　"payment."  And I think that would address all of our

13　concerns.

14　　　　　THE COURT:  All right.  I'm going to still ask you to

15　sign, ultimately sign off on the order, but I'm going to allow

16　these distributions to go out based on the oral rulings from

17　the bench, but I would appreciate that Mr. Honig, or Mr.

18　Harris, if he's drafting it, and Mr. St. James all sign off.

19　Okay?

20　　　　　MR. HONIG:  Thank you, Your Honor.

21　　　　　THE COURT:  All right.

22　　　　　MS. MANNING:  Thank you very much.

23　　　　　THE COURT:  Ms. Manning, gentlemen, thank you.  All

24　right.  That concludes the hearing.

25　　　　　MR. HARRIS:  Thank you, Your Honor.

1          MR. ST. JAMES:  Thank you, Your Honor.

2          MS. MANNING:  Thank you.

3      (Proceedings concluded at 3:16 p.m.)

4                          --oOo--

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                      CERTIFICATE

21      I certify that the foregoing is a correct transcript from
the digital sound recording of the proceedings in the above-
22 entitled matter.

23   **/s/ Kathy Rehling**                    **01/23/2015**
   _____     _____
24

25 Kathy Rehling, CET**D-444                 Date
Certified Electronic Court Transcriber

1                                    INDEX

2    PROCEEDINGS                                                    3

3    WITNESSES

4    -none-

5    EXHIBITS

6    -none-

7    RULINGS

8
     Gabrielson & Company Fee Application - Approved               4
9    David Honig Fee Application - Approved                        4
     James Lowe Fee Application - Approved                         5
10   Motion for Authority to Issue Tax Distribution                25

11   END OF PROCEEDINGS                                            29

12   INDEX                                                         30

13

14

15

16

17

18

19

20

21

22

23

24

25